# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PETRINA SMITH, individual, on behalf of herself and all others similarly situated,
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.

Case No. **19-1348 C**

## COLLECTIVE ACTION COMPLAINT

All allegations in this Collective Action Complaint (the "Complaint") are based upon information and belief except for those allegations which pertain to PETRINA SMITH ("PLAINTIFF") and her counsel. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after discovery. PLAINTIFF, on behalf of herself and all others similarly situated, complains as to DEFENDANT, THE UNITED STATES OF AMERICA ("Defendant" or "United States") and states and alleges as follows:

## NATURE OF THE COMPLAINT

1. Plaintiff brings this action on behalf of herself and all similarly situated current and/or former employees of Defendant, who had or have the job title of "Assistant Chief" and/or "Assistant Store Manager" and/or similar job titles and

positions (collectively, "Assistant Chief" throughout), which Defendant misclassified as exempt from overtime pay during the relevant time period.

2. Plaintiff worked for Defendant as an Assistant Chief in its Department of Veterans Affairs Veterans Canteen Service ("VCS") locations in Palo Alto and Menlo Park, California between September 2012 and February 2019. VCS classified Plaintiff as exempt from the Fair Labor Standards Act ("FLSA") and thereby exempt from the default requirement that employees be compensated for overtime hours worked at a rate of one and one-half times their regular rate of pay.

3. The VCS was established in 1946 to provide merchandise and services to veterans, caregivers and visitors.[1] It maintains its Central Office in Saint Louis, Missouri, and operates offices and canteens in designated geographical locations.[2] VCS operates more than 200 retail Patriot Stores and over 160 Patriot Brew coffee shops in Veterans Administration Medical Centers and outpatient clinics nationwide.[3] It employs over 4,000 employees across its VCS locations.[4]

---

[1] *See* https://www.vacanteen.va.gov/ (last visited, August 30, 2019). (Exhibit 2)

[2] *See* Veterans Health Administration Handbook, Veterans Canteen Service Procedures 1008.01, issued April 20, 2010, recertified April 30, 2015, (Exhibit 3-A)

https://www.va.gov/vhapublications/publications.cfm?pub=2 (last visited, August 30, 2019). (Exhibit 3-B)

[3] *See* https://www.vacanteen.va.gov/VACANTEEN/VCSRetail.asp (last visited, August 30, 2019). (Exhibit 4); https://www.vacanteen.va.gov/VACANTEEN/CoffeeShop.asp (last visited, August 30, 2019). (Exhibit 5)

[4] *See* https://www.shopvcs.com/t/about-us (last visited, August 30, 2019). (Exhibit 6)

4. Upon information and belief, Plaintiff complains that Defendant has a common policy that misclassified her and other similarly situated Assistant Chiefs employed with VCS as exempt employees. Specifically, Plaintiff complains that Defendant improperly classified its Assistant Chiefs as exempt when their primary duty consists of performing nonexempt work, such as preparing and serving food to customers, performing cleaning tasks and stocking the stores. Plaintiff's day-to-day job duties primarily consisted of making and receiving food, cleaning and stocking the store and ringing the registers.

5. Because of Defendant's common policy of misclassification, Plaintiff seeks to represent current and former Assistant Chiefs employed within the past three (3) years whom Defendant improperly classified as exempt and thereby deprived them of their right to earn overtime pay at the rate of one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours per week.

6. Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 that her rights and the rights of the similarly situated Assistant Chiefs have been violated by misclassifying the position as exempt and thereby depriving them of overtime pay to which they are entitled, an award of unpaid overtime compensation, an award of liquidated and/or other damages as permitted by applicable law, reasonable attorneys' fees and costs, and other relief available under the FLSA, as amended 29 U.S.C. § 201, *et. seq.*

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1491(a)(1), 28 U.S.C. § 2516, 28 U.S.C. § 2517, 29 U.S.C. § 216(b), as well as authority to grant declaratory relief under the FLSA pursuant to 28 U.S.C. § 2201, *et. seq.*

8. Venue is proper in the Court of Federal Claims pursuant to 28 U.S.C. § 1491(a)(1) as the United States is the Defendant.

9. This court has jurisdiction over Plaintiff's claims pursuant to the Tucker Act, 28 U.S.C. § 1491. Pursuant to the Tucker Act, this court may hear "any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States. . ." The FLSA provides an express waiver of sovereign immunity, and the Tucker Act provides a jurisdictional grant. *See King v. United States*, 112 Fed.Cl. 396, 399, 401 (2013) ("29 U.S.C. § 203(e)(2)(A), [] when read together with the private right of action found in 29 U.S.C. § 216(b), provides an explicit waiver of sovereign immunity authorizing federal employees to sue their employer, the United States.")

10. The Tucker Act, 28 U.S.C. § 1491(a)(1), provides this Court with subject-matter jurisdiction over money damages claims against the federal government, under non-tort-based, money-mandating statutes. The FLSA, 29 U.S.C. § 201, *et.*

*seq.*, is such a statute. The Tucker Act is not displaced as a jurisdictional source by the remedial scheme of the FLSA, 29 U.S.C. § 216(b), for that scheme is not self-executing, as it lacks its own judicial remedies. Rather than precisely define the appropriate forum, the FLSA allows claims for damages to be brought in any federal court of competent jurisdiction. 29 U.S.C. § 216(b). Because no specific court is identified, the FLSA leaves a gap which the Tucker Act was designed to address. *See King*, 112 Fed.Cl. at 400. Unlike statutes which authorize the jurisdiction of particular federal courts, the FLSA requires resort to other statutes, such as the Tucker Act, to determine the jurisdictional competence of federal courts. *See King*, 112 Fed.Cl. at 401. This Court's precedent has recognized that this Court has *exclusive* jurisdiction when the FLSA claim amount exceeds $10,000. *See e.g., King*, 112 Fed.Cl. at 400.

## PARTIES

### A. NAMED PLAINTIFF

11. Plaintiff, Petrina Smith, is a resident of Redwood City, California, located in San Mateo County. Defendant employed Plaintiff as an Assistant Chief in its Palo Alto and Menlo Park, California VCS locations from September 28, 2012 to February 21, 2019.

12. During her employment with Defendant, Ms. Smith regularly worked hours in excess of forty (40) hours per week without receiving overtime compensation as required by federal law.

13. At all relevant times, Ms. Smith was an employee of Defendant for FLSA purposes.

14. Attached as Exhibit 1 is Plaintiff's executed consent to sue.

### B. REPRESENTATIVE ACTION MEMBERS

15. The members of the representative action are those current and former Assistant Chiefs, similarly situated to Ms. Smith, who worked for Defendant over the past three (3) years and who worked in excess of forty (40) hours in one or more work weeks but were not paid overtime at the statutory rate (the "Representative Action Members").

### C. DEFENDANT

16. The United States Department of Veterans Affairs is a federal agency of the Defendant. As a public agency, Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1)(C).

17. Defendant employs or employed the Named Plaintiff and Representative Action Members for FLSA purposes.

## FACTUAL ALLEGATIONS

18. VCS employed Plaintiff, and those similarly situated, as Assistant Chiefs. Their primary job duties included assignment to different areas of each canteen, as directed by the Chiefs who supervised the Assistant Chiefs, and their primary duties consisted of time spent preparing, making and serving food to canteen customers, performing cleaning tasks, ringing the registers, manning the counters and stocking the stores.

19. Upon information and belief, Defendant employs a uniform pay practice by which each Assistant Chief is classified as exempt and is not paid the statutorily required overtime rate for hours worked in excess of forty (40) hours in a given workweek. Defendant subjected each Assistant Chief to its Pay Plan/Grade/Step pay policy.

20. In Plaintiff's case, Defendant classified her Pay Plan/Grade/Step as VC, Grade 11, Step 05. Box ten (10) of her pay stub shows that Defendant classified this position as exempt. While pay grades and steps may vary, Defendant's common policy classified the Assistant Chief position as exempt nationwide.

21. Under the FLSA, there is a statutory presumption that employees are to be compensated for overtime work at a rate of at least one-and-one-half times the employee's regular rate of pay unless the position fits within a limited qualification for exemption. *See* 29 U.S.C. § 207(a); 5 C.F.R. § 551.202(a), (b). "If there is a

reasonable doubt as to whether an employee meets the criteria for exemption, the employee will be designated FLSA nonexempt." 5 C.F.R. § 551.202(d). As discussed in turn below, Plaintiff and the similarly situated Assistant Chiefs do not meet the qualifications for exemption from the FLSA requirements.

22. Defendant required Plaintiff to perform nonexempt duties lacking managerial or discretionary character in the great majority of her working hours. Plaintiff spent more than ninety (90) percent of her working hours performing manual, rather than managerial, tasks. Her assigned responsibilities would vary day-to-day depending on the tasks the Canteen Chief (the "Chief") delegated to Plaintiff. Plaintiff spent the majority of her day performing manual tasks necessary to deliver the canteen's principal product to customers of the food service, retail store and coffee products and services.

23. Plaintiff was not employed in a bona fide administrative capacity because her primary duty was in performing production functions for the food service, retail store and coffee products and services. *See* 5 C.F.R. § 551.206. The Chief position, who Plaintiff and other similarly situated Assistant Chiefs reported to, was responsible for overseeing operations and exercising discretion and independent judgment on significant matters.

24. Plaintiff was not employed in a bona fide executive capacity because Plaintiff's day-to-day, primary duties consisted of manual tasks for providing goods

and services to customers of the food service, retail store and coffee products and services. See 5 C.F.R. § 551.205. Plaintiff did not hire or fire employees. The Chief, rather than the Assistant Chief, directed the hiring and firing of employees. To Plaintiff's knowledge, Plaintiff did not make recommendations that the Chief relied upon in making hiring and firing decisions.

25. Plaintiff was not employed in a bona fide professional capacity because she did not perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. See 5 C.F.R. § 551.207.

26. Although Defendant's computer system would reflect that Defendant scheduled Plaintiff to work an eight (8) hour shift in a day, Plaintiff often worked fourteen (14) to fifteen (15) hours per day, if not more. Her work schedule would often be from approximately 6:00 or 7:00AM to 9:00 or 10:00PM. For example, in 2015, Plaintiff sent a letter to Human Resources and Regional Manager, Joe Dean, complaining that she was working fourteen (14) to sixteen (16) hours per day. On her first day of employment in 2012, she worked a sixteen (16) hour day without meal or rest breaks. During the fourth quarter holiday season, between September and January, on certain days Plaintiff was required to deliver goods to other medical centers and on those days in particular, Plaintiff would often work extended hours from 4:00 AM or 4:30AM until 11:00PM. Plaintiff, in addition to her daily canteen

tasks, would incur travel time and have additional responsibilities such as securing the truck and transporting merchandise back to the store.

27. Additionally, Defendant often called Plaintiff to work on her scheduled days off. On one occasion, she worked fourteen (14) days in a row and was called in to work a fifteenth (15th) consecutive day. The majority of the time Ms. Smith would work six (6) days a week, and she could also be subject to being called in on her day off. During the fourth quarter holiday season, from September to January, the Chief, Jerica Simpson, regularly called her to work on her days off.

28. Ms. Smith would frequently work eighty (80) to eighty-five (85) hours per week, if not more. Defendant compensated Plaintiff by paying her for forty (40) hours per week, but not overtime compensation at the statutorily required rate for hours worked in excess of forty (40) per week. Assuming an eighty (80) hour week, Plaintiff would have earned approximately $1,808 (40 additional hours x the overtime rate of $45.20 per hour) in overtime pay each week, or a sum of $3,616 per pay period.

29. Plaintiff complained to management about this practice and Defendant took no action to properly compensate Plaintiff. For example, she wrote a letter to her Regional Manager and Human Resources in 2015 where she complained about the overtime hours she was working. During the course of her employment, she complained to Regional Managers — Danny Kaufman, Ray Garza, Joe Dean— and

her Chiefs, including Maggie Baker, Kenny Ung, Kimberly Adams and Jerica Simpson, about her hours and/or not receiving overtime pay. She was told that she was salaried and that she had to stay until her work was complete.

30. Upon information and belief, Defendant continues to maintain its common policy of misclassifying Assistant Chiefs as exempt from the overtime provisions of the FLSA. However, the Assistant Chiefs have as their primary duty and spend the majority of their time performing nonexempt work, including preparing, making and serving food to canteen customers, performing cleaning tasks and stocking the stores. Therefore, their jobs are, in fact and in law, nonexempt from the overtime provisions of the FLSA notwithstanding any FLSA exemption.

31. Under the FLSA, 29 U.S.C. § 207, Defendant must compensate nonexempt employees who work in excess of forty (40) hours in a workweek at a rate of one and one-half times their regular rate of pay.

32. Contrary to the above statutory enactment, Defendant fails to pay the Assistant Chiefs overtime pay at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

33. Defendant willfully violated the FLSA by knowingly, and/or with reckless disregard, failing to compensate Plaintiff for the hours she worked in excess of forty (40) hours per week according to the terms of the FLSA, 29 U.S.C. § 201, *et seq*, and interpretive case law and decisions..

34. Defendant knew, or should have known, Plaintiff and other similarly situated individuals were working more than forty (40) hours in a week because the Chiefs <u>saw</u> Plaintiff and other similarly situated employees working, assigned them tasks and exchanged communications with them past the employees' forty-hour week. Additionally, Plaintiff complained to the Chief, Human Resources, and Regional Managers about the number of hours she was working.

35. Defendant did not request or direct Plaintiff to keep records regarding her hours worked.

36. Upon information and belief, Defendant does not maintain a timecard system to track hours worked by Assistant Chiefs.

37. Upon information and belief, Defendant did not keep records regarding the hours worked by Plaintiff and other similarly situated Assistant Chiefs as required by 29 C.F.R. § 516.2.

38. At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et. seq.*

39. Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1).

40. At all times relevant to this action, Plaintiff and those similarly situated were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e).

41. Plaintiff either (1) engaged in commerce, or (2) engaged in the production of goods for commerce, or (3) has been employed in an enterprise engaged in commerce or in the production of goods for commerce.

42. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and those similarly situated to work overtime hours without overtime pay and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

43. The violations of the FLSA, 29 U.S.C. § 207, committed by Defendant and alleged in this Complaint present common questions of law and fact.

## COLLECTIVE ACTION ALLEGATIONS

44. Plaintiff brings this action under the FLSA on their own behalf and on behalf of the following:

*All current and former Assistant Chiefs and/or Assistant Store Managers and/or those who had or have similar job titles and positions, employed within the past three (3) years with the Department of Veterans Affairs VCS and who worked over forty (40) hours per workweek and were not paid at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per week.*

45. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

46. This complaint may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), for all claims asserted by Plaintiff Petrina Smith, the Representative Plaintiff, because the claims of Petrina Smith are like the claims of the Representative Action Members.

47. Upon information and belief, a FLSA collective action is appropriate because the Assistant Chiefs described in the Complaint are "similarly situated" to Plaintiff in that they all performed similar job duties and were subject to Defendant's common policy of misclassifying them as exempt.

48. The classification status of the Plaintiff and similarly situated Assistant Chiefs involves the overarching and predominant legal question: did Defendant misclassify its Assistant Chiefs as exempt under the FLSA?

49. Plaintiff shares the same interests as the similarly situated Assistant Chiefs in that the outcome of this action will determine whether they are exempt under the FLSA. Thus, a collective action is the most efficient mechanism for resolution of the claims herein.

50. Plaintiff proposes to undertake the appropriate proceedings to have the Representative Action Members, aggrieved by Defendants' unlawful conduct, notified of the pendency of this action and join this action as plaintiffs, pursuant to 29 U.S.C. section 216(b).

## COUNT I — FLSA VIOLATION FOR FAILURE TO PAY OVERTIME WAGES

51. Plaintiff Petrina Smith, on behalf of herself and all similarly situated employees of Defendant, re-alleges and incorporates by reference all the allegations in the preceding paragraphs of this complaint as though fully set forth herein.

52. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and one-half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207. Under 29 U.S.C. § 207(a)(1), in pertinent part: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times that regular rate at which he is employed."

53. In performance of her duties for Defendant, Plaintiff, and others similarly situated, worked over forty (40) hours per week and did not receive overtime compensation for the work, labor and services they provided to the Defendant, as required by the FLSA, 29 U.S.C. § 207.

54. Plaintiff and the Representative Action Members are not exempt from the right to receive overtime pay under the FLSA. Defendant owes overtime compensation to Plaintiff and the Representative Action Members for all overtime hours worked.

55. Upon information and belief, Defendant employs a common policy that evades overtime pay for Plaintiff and the similarly situated Assistant Chiefs she seeks to represent in a FLSA collective action. This uniform, FLSA-violating common policy applies to all Assistant Chiefs who worked for Defendant.

56. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), providing for a three (3) year statute of limitations.

57. Plaintiff proposes to undertake appropriate proceedings to have such similarly situated persons aggrieved by Defendant's unlawful conduct given prompt and effective notice of the pendency of this action and to provide them with the opportunity to join this action as plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

58. As a result of the foregoing, Plaintiff seeks judgment against Defendant, on her own behalf and on behalf of those similarly situated Representative Action Members who file written consents to joinder in this action, for overtime compensation for hours worked in excess of forty (40) in a workweek, with

liquidated damages, attorneys' fees, costs, and interest as provided for under 29 U.S.C. §216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all proposed Representative Action Members, prays for relief as follows:

1. Designation of this action as a collective action on behalf of the proposed Representative Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the FLSA opt-in class apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b),

2. Designation of Plaintiff Petrina Smith as Representative Plaintiff of the putative members of the FLSA representative action,

3. A declaratory judgment that the practices complained of herein are unlawful under the FLSA,

4. Conditional and Final Certification of a Collective Action under 29 U.S.C. §216(b),

5. An award of unpaid overtime compensation for Plaintiff and all collective group members who opt-in this action, pursuant to FLSA, 29 U.S.C. § 207,

6. An award of liquidated damages,

7. An award of attorneys' fees, interest, and costs of suit pursuant to 29 U.S.C. § 216(b),

8. Pre-judgment and Post-judgment interest, as provided by law, and

9. For such other and further legal and equitable relief as this Court deems necessary, just and proper.

| Dated September 4, 2019 | Respectfully submitted, |
|---|---|
|  | *[signature]*<br>David R. Markham<br>(CA Bar No. 071814)<br>dmarkham@markham-law.com<br>THE MARKHAM LAW FIRM<br>750 B Street, Suite 1950<br>San Diego, CA 92101<br>Tel.: (619) 399-3995<br>Fax: (619) 615-2067 |
|  | Stephen B. Morris<br>(CA Bar No. 126192)<br>morris@sandiegolegal.com<br>THE LAW OFFICES OF STEPHEN B. MORRIS<br>444 West C Street, Suite 300<br>San Diego, CA 92101<br>Tel.: (619) 239-1300<br>Fax: (619) 374-7082<br>(Of Counsel) |
|  | Walter Pennington<br>(CA Bar No. 214470)<br>wpennington@pennfirm.com<br>PENNINGTON LAW FIRM<br>3302 30th Street<br>San Diego, CA 92104<br>Tel.: (619) 940-6157 |
|  | Attorneys for Plaintiff PETRINA SMITH, on behalf of herself and all others similarly situated |