## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PETRINA SMITH, individual, on behalf of )
herself and all others similarly situated,      )
                                                                   )
                        Plaintiff,                      )
                                                                   )
v.                                                              )        No. 19-1348C
                                                                   )        Judge Roumel
UNITED STATES OF AMERICA          )
                                                                   )
                                                                   )
                        Defendant.                    )
                                                                   )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE

David R. Markham
*dmarkham@markam-law.com*
Maggie Realin
*mrealin@markham-law.com*
Lisa Brevard
*lbrevard@markham-law.com*
THE MARKHAM LAW FIRM
8910 University Center Lane, Suite 400
San Diego, CA 92122
Telephone: (619) 399-3995
Facsimile: (619) 615-2067

Walt Pennington
Pennington Law Firm
3302 30th Street
San Diego, CA  92104
Telephone: (619) 940-6157

Stephen B. Morris
The Law Offices of Stephen B. Morris
444 West C Street, Suite 300
San Diego, CA  92101
Telephone: (619) 239-1300
Facsimile: (619) 374-7082

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 5

II.     PROCEDURAL HISTORY ...................................................................................... 8

III.    FACTS ........................................................................................................................ 9

    A.   *Plaintiff's Employment and Job Duties* ............................................................. 9

    B.   *Veteran Canteen Services' Store Structure and Hierarchy* .......................... 9

    C.   *Defendant Maintained Nationwide Canteen Operating Policies and Procedures which Applied to all Assistant Canteen Chiefs* ........................................................... 11

        i.   All Assistant Chiefs Are Subject to the Same Job Description ..................... 12

        ii.   Defendant Recruits Assistant Chiefs Using the Same or Similar Job Postings Describing Assistant Chiefs' Job Duties, Including Non-Exempt Duties ........................ 13

        iii.   Defendant Classifies all Assistant Chiefs as FLSA Exempt .......................... 14

        iv.   All Canteen Chiefs are Subject to the Same Job Description; Canteen Chiefs, not Assistant Chiefs, Oversee the Canteen Unit ................................................. 14

        v.   The Same VCS Operating Procedures and Policies Govern Responsibilities of Canteen Chiefs and Assistant Chiefs Nationwide, showing that Canteen Chiefs, and not the Assistant Chiefs, are Responsible for the Overall Functioning of the Canteens ........... 15

        vi.   Assistant Chiefs Work Hours over Forty Hours in a Week, without Overtime Pay, to Meet Canteen Operating Demands ............................................................. 17

        vii.   Defendant had a Common Unlawful Policy not to Pay Overtime Wages to Assistant Chiefs by Misclassifying them as Exempt from the FLSA ............................. 19

        viii.   Assistant Chiefs were Subject to the Same VCS Pay Setting Policies ......................... 20

        ix.   Assistant Chiefs Earned the Same Salary Pay Range, or less, than Non-Exempt Hourly Associates, like Cooks, Waiters and Janitors ................................................ 21

IV.    LEGAL ARGUMENT .............................................................................................. 22

    A.   *Legal Standard for Conditional Certification is Lenient* ............................... 22

    B.   *Plaintiff Satisfied her Minimal Burden for Conditional Certification* .................... 25

    C.   *The Court should Order Notice to all Assistant Chiefs who Worked for Defendant within the Past Three Years* ................................................................................... 29

    D.   *Discovery of Contact Information of the Potential Plaintiffs is Necessary to Carry Out Notice* ................................................................................................................. 32

    E.   *Plaintiff's Proposed Notice is Appropriate and should be Mailed to Potential Plaintiffs and Posted at Defendant's Canteen Facilities* ....................................................... 33

    F.   *The Court should Equitably Toll the Statute of Limitations for all Potential Plaintiffs* ...... 34

V.     CONCLUSION ........................................................................................................ 35

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.,* 242 F.R.D. 530, at 542 (N.D. Cal. 2007) ........... 30, 32, 33, 34

*Aguayo v. Oldenkamp Trucking*, CV F 04-6279 ASI LJO, 2005 WL 2436477 (E.D. Cal. Oct. 3, 2005)................................................................................................................................. 25

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) ...................................................... 30

*Aros v. United Rentals, Inc.*, 269 F.R.D. 176 (D. Conn. 2010) .................................... 27

*Barry v. United States*, 117 Fed. Cl. 518 (2014)................................................... passim

*Briggs v. United States*, 54 Fed.Cl. 205 (2002) .......................................................... 28

*Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012)...................... 25

*Carter v. Anderson Merchandisers, LP*, EDCV 08-25-VAP OPX, 2008 WL 2783193 (C.D. Cal. July 10, 2008) .............................................................................................................. 24

*Centurioni v. City and County of San Francisco*, No. C 07-01016, 2008 WL 295096 (N.D. Cal. Feb. 1, 2008).......................................................................................................... 24, 30

*Cuzco v. Orion Builders*, 477 F.Supp.2d 628 (S.D.N.Y. 2007)................................... 23

*Doe No. 1 v. United States*, 143 Fed. Cl. 113 (2019)................................................... 27

*Gayle v. United States*, 85 Fed. Cl. 72 (2008) ........................................... 23, 28, 30, 33

*Goudie v. Cable Commc'ns., Inc.*, 2008 WL 4628394 (D. Or. Oct. 14, 2008) .......................... 30

*Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835 (N.D. Cal. 2010).......................... 24

*Heckler v. DK Funding*, 502 F.Supp.2d 777 (N.D. Ill.2007)...................................... 23

*Helton v. Factor 5, Inc.*, C 10-04927 SBA, 2012 WL 2428219 (N.D. Cal. June 26, 2012)......... 23

*Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249 (S.D.N.Y.1997) ...................................... 22

*Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)....................... 23, 25, 32, 33

*In re Third Party Subpoenas Issued to Rambus, Inc*., 2014 WL 12616734 (N.D. Cal. Dec. 5, 2014)................................................................................................................... 29

*Ivery v. RMH Franchise Corp.*, 280 F.Supp.3d 1121 (N.D. Ill.2017) ..................... 25, 27

*Leuthold v. Destination America, Inc.*, 224 F.R.D. 462 (N.D. Cal. Aug. 2014)..................... 24, 25

*Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357 (S.D.N.Y.2007) ............................. 24, 29

*Meyer v. Panera Bread Co.*, 344 F.Supp.2d 193 (D.D.C. 2018).................................................. 27

*Mitchell v. Acosta Sales, LLC*, 841 F.Supp.2d 1105 (C.D. Cal. 2011)............................ 23, 32, 34

*Mowdy v. Beneto Bulk Transp.*, C 06-05682 MHP, 2008 WL 901546 (N.D. Cal. Mar. 31, 2008)

...................................................................................................................................................... 34

*Plaintiff No. 1 v. United States*, 2021 WL 1328609 *1 (Apr. 9, 2021). ....................................... 23

*Rees v. Souza's Milk Transp., Co.*, CVF0500297 AWI LJO, 2006 WL 738987 (E.D. Cal. Mar.

22, 2006)...................................................................................................................................... 25

*Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234 (N.D.N.Y. 2002) ............................ 30

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006).......................... 25, 33

*Schaefer v. M&T Bank Corp.*, 122 F.Supp. 3d 189 (S.D.N.Y. 2015).......................................... 27

*Varghese v. JP Morgan Chase & Co.*, 2016 WL 4718413 (S.D.N.Y. Sept. 8, 2016)................. 27

*Waggoner v. U.S. Bancorp*, 110 F.Supp.3d 759 (N.D. Ohio 2015) ............................................. 26

*Wellens v. Daiichi Sankyo, Inc.*, 2014 WL 2126877 (N.D. Cal. May 22, 2014)......................... 24

*Whalen v. United States*, 85 Fed. Cl. 380 (2009).................................................................. 22, 33

**Statutes**

29 U.S.C. § 201 ............................................................................................................................. 6

29 U.S.C. § 216(b) ...................................................................................................................... 22

29 U.S.C. § 255(a) ...................................................................................................................... 29

29 U.S.C. § 256 ........................................................................................................................... 32

29 U.S.C. § 256(b) ...................................................................................................................... 34

**Regulations**

29 C.F.R. § 541.600(b)…………………………………………………………………………… 22

## I.   INTRODUCTION

Plaintiff Petrina Smith submits this memorandum in support of her Motion for

Conditional Certification and Notice pursuant to Section 216(b) of the Fair Labor Standards Act

("FLSA"), on behalf of herself and other exempt-classified Assistant Canteen Chiefs and/or

Assistant Store Managers (also referred to as "Assistant Managers," "Assistant Store Managers"

or "Assistant Operations Managers," and collectively referred to as "Assistant Chief(s)")

employed by Defendant in its Department of Veterans Affairs (VA) Veterans Canteen Services

("VCS") throughout the United States from the period of time commencing three years before

Plaintiff and collective action members file their consents to sue, and until the present. Plaintiff

respectfully submits this motion for conditional certification of a class of similarly situated

employees who were denied overtime pay by the VCS. Plaintiff requests that the Court-approved

notice be issued to collective action members, permitting them an opportunity to opt-in to this

action.

The crux of Plaintiff's claim is that Defendant misclassified its Assistant Chiefs as exempt

and failed to pay them overtime compensation for hours worked  in excess of forty (40) per

workweek in violation of the FLSA, even though Assistant Chiefs did not meet a FLSA

exemption, as they worked under the administrative supervision of the Canteen Chief and spent

the majority of  their workdays performing non-exempt duties such as providing customer service,

preparing and serving food to customers, working on the cash register, and restocking and

cleaning the canteen. The VCS has uniformly, in all cases and throughout all canteens nationwide,

applied an "exempt" classification, meaning that Assistant Chiefs are not paid time-and-one half

overtime compensation under the FLSA. Yet, Defendant's own policies acknowledge that

overtime work (hours over 40 in a week) is expected by Assistant Chiefs when necessary to meet

operating demands and canteen customer service standards, and that Assistant Chiefs are salaried employees and not eligible for overtime pay except for in extremely rare situations. *See* Exhibit 1[1] (DOJ197-198) (Defendant's overtime policy); *see also* Ex. 2, Deposition of Joseph R. Tober ("Tober Dep. Tr."), at 100:4-101:11 (describing that overtime pay may be provided only in "unexpected [situations] or a national emergency," but not in situations where Assistant Chiefs need to work additional hours to meet the canteen and other business deadlines).

Because there is an important legal issue common to these individuals—whether the work of Assistant Chiefs can meet any FLSA exemption—Plaintiff seeks conditional certification of claims under the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.* With the benefit of Plaintiff now obtaining some first-phase conditional certification discovery, including receipt of over a thousand pages of Defendant's nationwide VCS corporate policy and procedure documents, and having conducted a 30(b)(6) deposition and a fact witness deposition, Plaintiff has met (or exceeded) the modest threshold showing that she and other Assistant Chiefs are "similarly situated" with respect to their FLSA claims, and that the Notice to class members under Section 216(b) is appropriate to give them the opportunity to join this lawsuit.

Specifically, evidence shows at least nine key areas of commonality between Assistant Chiefs which warrant conditional certification and notice to collective action members: (1) Plaintiff and Assistant Chiefs were all subject to the same uniform job description applicable to all VCS locations nationwide; (2) the VCS recruits for the Assistant Chief position nationwide using job listings which describe very similar, if not identical, job duties; (3) Defendant uniformly classified Plaintiff and all Assistant Chiefs nationwide as FLSA exempt at all times during the

---

[1] All Exhibits are provided in Plaintiff's Appendix, filed concurrently with this Motion.

relevant time period; (4) Canteen Chiefs, who supervised Assistant Chiefs and oversaw the operation of the canteen, were also subject to a uniform job description, which applied to all VCS locations nationwide; (5) Nationwide VCS operating policies and procedures provide for the roles and responsibilities of Canteen Chiefs, Assistant Chiefs, and common guidelines for the VCS canteen operations; (6) Defendant's own overtime policy, coupled with Plaintiff's affidavit and Defendant's 30(b)(6) testimony, evidence that Plaintiff and Assistant Chiefs were required to work beyond forty (40) hours in a workweek to meet operating demands and achieve canteen customer service standards, and that overtime pay in these situations is <u>not</u> provided, (7) Under Defendant's overtime policy, Assistant Chiefs were eligible to "apply" for overtime or compensatory time off pay only in rare "emergencies" or "unusual circumstances;" Assistant Chiefs did not have capabilities to adjust their own pre-populated "time" record (work schedule) from the default times; any request to adjust this record required multiple levels of manager pre-approvals, which was not feasible; (8) Assistant Chiefs were subject to the same pay practices and policies which governed how Assistant Chiefs' salaries were set and determined, and (9) Defendant's 30(b)(6) witness admits that Assistant Chiefs earned salaries that fall within the same pay range (and in certain circumstances *less*) than the non-exempt hourly associates employed by the VCS, and which in certain cases potentially fall below the minimum salary requirements set by the FLSA as a threshold requirement to be classified as FLSA exempt.

The full scope and breadth of VCS's misclassification policy is a merits question that cannot be addressed or resolved at this preliminary stage. Rather, it is sufficient for purposes of this motion that – as confirmed by VCS's 30(b)(6) witness – the VCS classified Assistant Chiefs as exempt in a common, universal way which applied to all Assistant Chiefs nationwide, who fell under the purview of one common job description. Further, the detailed VCS policies and

procedures, which apply to all Canteens nationwide, are indicative of sufficient commonality to warrant conditional certification at this stage. Plaintiff easily satisfies the very modest threshold showing that she and other Assistant Chiefs are "similarly situated" with respect to their FLSA claims. Because Plaintiff has met that minimal required showing, the Court should authorize distribution of Plaintiff's proposed Collective Action Notice and Consent to Join form to all Assistant Chiefs employed by Defendant during the past three years so that Assistant Chiefs may have an opportunity to opt-in to this action.

## II.  PROCEDURAL HISTORY

Plaintiff filed her complaint and consent to sue on September 4, 2019, alleging violations of FLSA for failure to pay overtime wages to Assistant Chiefs who worked at Defendant's VCS locations in the United States, and who during the relevant time period have been classified by Defendant as exempt from overtime pay. The parties engaged in discovery. On March 13, 2020, Plaintiff served a set of interrogatories and request for production of documents on Defendant. After multiple continuances due to delays caused by the COVID-19 pandemic and Defendant's difficulties in obtaining the requested discovery information from the VA, on January 25, 2021, Defendant produced thousands of pages of policy documents and information, including VCS national policy and procedure operating documents, and a sample of employment personnel files and time and attendance records for 71 Assistant Chiefs. On May 12, 2021, Plaintiff deposed Defendant's Human Resources Manager, Abner Martinez, whom Defendant identified in its initial disclosures as a percipient witness. On May 19, 2021, Plaintiff deposed Defendant's designated 30(b)(6) witness, Joseph R. Tober, regarding the topics of employee classification, class member job descriptions, applicable policies, and other relevant topics.

### III.    FACTS

#### A.  Plaintiff's Employment and Job Duties

Plaintiff worked for Defendant as an Assistant Chief in its VCS locations in Palo Alto and Menlo Park, California, between September 2012 and February 2019. Declaration of Petrina Smith ("Smith Decl."), ¶2. Canteen Chiefs assigned Plaintiff to different areas of each canteen, and her primary duties consisted of preparing, making and serving food to canteen customers, performing cleaning tasks, ringing the registers, manning the counters and stocking the stores. *Id.*, ¶3. It was common and typical for Plaintiff to receive her assignments from the Canteen Chief, and she would perform her job duties under the supervision and by delegation of the Canteen Chief. *See id.*, ¶¶3,5. Plaintiff was routinely required to work fourteen to sixteen hours per day, six days per week, to perform her expected job duties. *Id.*, ¶¶4-5. Plaintiff complained to her Canteen Chiefs, Regional Managers and Human Resources about these conditions. *Id.*, ¶¶8-9. Plaintiff spent almost all of her work time, approximately ninety percent of her day, performing the manual tasks necessary for operation of the canteen including customer service, preparing and serving food to canteen customers, running the registers, and stocking the stores, among other duties, and only spent minimal time (approximately 10%) on managerial tasks. *Id.*, ¶3. Plaintiff was not involved in personnel hiring and firing decisions, which were handled exclusively by the Canteen Chief. *Id.*, ¶7.

#### B.  Veteran Canteen Services' Store Structure and Hierarchy

The VCS provides food and retail services to veterans and their family members, employing approximately 3,600 employees nationwide at approximately 180 Canteen locations throughout the United States. Ex. 2, Tober Dep. Tr., at 17:10-11, 24:3-6; Ex. 3, Deposition of Abner Martinez, ("Martinez Dep. Tr.") at 22:1-6. The VCS is self-sustaining which means that

its continued operation is based on the success of the VCS organization's sales, budgeting and productivity metrics (including managing personnel, salary and wage costs). *See* Ex. 2, Tober Dep. Tr., at 17:15-20; 92:15-18 ("At the end, it all has to fit within the end of year budgets, and that's the challenge."); 143:7-144:3; 144:9-13; 145:15-23; 146:4-14.

The VCS issues detailed operating procedures and guidelines that apply to the operation of every canteen in the United States, through its nationalized policies established by the VCS Central Office in Saint Louis, Missouri. *See id*., at 32:2-15. VCS Canteens contain several different areas which provide customer service to VCS customers, including food, coffee and retail services, as well as additional lines of business including food trucks, coffee and concessionaries. *Id.* at, 32:21-33:11. The VCS canteens are divided into approximately fifteen geographical regions, each managed by a Regional Manager. *See* Ex. 4, (DOJ4684). The Regional Manager is responsible for overseeing the VCS operational programs for that Regional Manager's assigned canteen locations. Ex. 5, VCS Organizational Chart at DOJ4361. Regional Managers are "tasked [with] ensur[ing] the operating and financial goals, objectives and standards are met for all assigned canteens." *Id.* In turn, every canteen has a Canteen Chief, who oversees the Canteen, and the Chief reports to the Regional Manager. Ex. 2, Tober Dep. Tr., at 32:21-33:1; 34:13-18; Ex. 6, (Canteen Chief VCS Job Description, DOJ04677-04683). The Canteen Chief oversees the operation of the canteen, ("primary duties include the store operations, i.e., retail, food and vending operations"), and manages the personnel at the canteen location. *Id*., at 32:21-33:1; Ex. 6, at 4678.

Specifically, the Canteen Chief (or General Manager) is responsible for "directing, analyzing, organizing, formulating, implementing, budgeting and administering operational activities, and providing necessary supervisory [] support for his/her assigned [canteen]

location." Ex.'s 7 (PLTF 000005) and 6 at DOJ04678 (the Canteen Chief handles

"administrative controls, reviews and processes relative to canteen operations."). Collective

Member Assistant Chiefs work under the administrative supervision of the Canteen Chief at all

locations and can be assigned to perform tasks in specific designated areas of the canteen, such

as in the food or coffee areas. Ex. 2, Tober Dep. Tr., at 29:24-30:10, 30:20-31:2, 31:11-17; *see*

*also* Ex. 3, Martinez Dep. Tr., at 41:7-15; Ex. 7, (Assistant Chief Job Description, DOJ141-145).

In every instance nationwide, the Assistant Chief reports to the Canteen Chief, who oversees all

departments in the Canteen. Ex. 2, Tober Dep. Tr., at 32:21-34:18.

## C. Defendant Maintained Nationwide Canteen Operating Policies and Procedures which Applied to all Assistant Canteen Chiefs

The VCS issues Canteen Operating Policies and Procedures ("COPPs") which apply to

all VCS Canteens in the United States. Ex. 2, Tober Dep. Tr., at 64:5-9, 72:2-11; *see also e.g.*,

Ex. 9, at DOJ3466. These detailed operating procedures outline policies and procedures for the

Canteen financials and budgeting, asset protection and security, human resource policies and

procedures, recruitment, inventory and stock management, among other procedures, including

for operating the Canteen food, retail and vending services. *See e.g.*, Ex. 3, Martinez Dep. Tr. at

23:9-15. Defendant's nationalized COPP policies have been in effect throughout the relevant

time period and each is applied to every VCS location nationwide. *See* Ex. 2, Tober Dep. Tr., at

64:5-9. Thus, the over 400[2] Assistant Chiefs employed by the VCS during the relevant

period were subject to these same nationalized policies. *See id*. The common policies and

---

[2] Defendant provided information on the number of Assistant Chiefs each year between 2016 and 2019, which ranged from 395 to 435 per year. When accounting for the additional time to present day, the number of Assistant Chiefs in the collective time period will be greater. *See* Ex. 4.

procedures applied to Assistant Chiefs as illustrated below:

    **i.**    **All Assistant Chiefs Are Subject to the Same Job Description**

Assistant Canteen Chiefs (or the Assistant Manager, Assistant Store Manager or Assistant Operations Manager, which are collectively referred to as "Assistant Chiefs")[3] were assigned to the same job description, which was universally classified by the VCS as exempt. Ex. 2, Tober Dep. Tr., at 34:24-35:10; *see also* Ex. 8, (DOJ141-145). This Assistant Chief job description covers all Assistant Chiefs in this action regardless of the: (1) region, or state in which the Assistant Chiefs work; (2) size, volume, or complexity of the canteen; (3) the number of employees in the canteen; and (4) the experience level or "grade" of the Assistant Chief. *See id.*

Job duties pertaining to the Assistant Chief position are universal and described in detail, and state that Assistant Chiefs perform food, vending and/or retail responsibilities, are responsible for promoting customer service and carrying out their duties "under the administrative supervision of the Canteen Chief, who establishes program goals, objectives and requirements." Ex. 8; *see also* Ex. 2, Tober Dep. Tr. at 30:6-10 ("Q: And so this is your understanding, that assistant chiefs work under an administrative supervision of canteen chiefs? Is that a fair description? A. Yes."); Ex. 3, Martinez Dep. Tr., at 44:15-23 (Assistant Chiefs perform customer service as part of their job functions, which can include running the cash register); Ex. 2, Tober Dep. Tr., at 38:3-7 (assisting customers and customer service is a primary responsibility of Assistant Chief position).

Further, the job description specifies that Assistant Chiefs carry out job functions in

---

[3] Defendant's 30(b)(6) witness confirmed these positions are interchangeable and subject to the same common job description as is discussed in this section. Ex. 2, Tober Dep. Tr., at 23:4-10, 27:23-28:5, 48:25-49:4, 50:13-17.

accordance with COPPs. *See* Ex. 8, at 141 ("Assistant Chiefs perform duties in accordance with…internal operating procedures, standards and policies.")  Defendant's 30(b)(6) witness confirmed that COPPs apply to all Assistant Chiefs, regardless of geographical location, experience level and pay grade, and that this is the only job description in effect during the relevant time period. Ex. 2, Tober Dep. Tr., at 34:24-35:10. Further, every Assistant Chief employed by the VCS reports to a Canteen Chief (also referred to as General Manager or Store Manager, and collectively referred to as "Canteen Chief" throughout), who is responsible to manage the operations and direct the personnel within the canteen. Ex. 2, Tober Dep. Tr. at, 32:21-33:1; Ex. 6, DOJ4677-4683. Further, Assistant Chiefs are subject to the same performance review plan metrics. Ex. 3, Martinez Dep Tr., at 90:5-8. Thus, Defendant's single universal, nationwide job description applies to all collective action members in this lawsuit.

### ii. Defendant Recruits Assistant Chiefs Using the Same or Similar Job Postings Describing Assistant Chiefs' Job Duties, Including Non-Exempt Duties

The VCS uses job postings to recruit VCS Assistant Chiefs around the country, whose job descriptions are identical, or near identical, in terms of the job duties described. For example, the VCS is hiring for an Assistant Chief position in Decatur, Georgia, and the job duties in the job posting include promoting great customer service, cleanliness, and sanitation, as well as stocking responsibilities. Ex. 10 (PLTF000013-14.) Likewise, for example, VCS is hiring Assistant Chiefs in Saint Cloud, Minnesota, (ex. 11 (PLTF000015-16)) and, Nashville, Tennessee (ex. 12, PLTF00003-00004), which show the same or very similar sets of job duties; *see also* Ex. 3, Martinez Dep. Tr., at 58:3-23 (noting job duties are the same or similar between advertised positions).

### iii.   Defendant Classifies all Assistant Chiefs as FLSA Exempt

Defendant's 30(b)(6) witness confirms that throughout the relevant time period all Assistant Chiefs employed by the VCS have been classified as FLSA exempt. Ex. 2, Tober Dep. Tr. at 122:19-24. The VCS assigns a certain "grade" to the Assistant Chief position based on factors such as experience and location. *Id.* at, 93:4-8. Although this grade level can vary between Assistant Chiefs, all Assistant Chiefs regardless of grade level or geographical location are classified as FLSA exempt (and subject to the same job description). *Id.*, at 34:24-35:10, 93:20-23, 122:19-24.

### iv.   All Canteen Chiefs are Subject to the Same Job Description; Canteen Chiefs, not Assistant Chiefs, Oversee the Canteen Unit

Defendant's own policies confirm that Canteen Chiefs, not Assistant Chiefs, are responsible for the operation of the canteen facility and have the discretion to make decisions that affect the canteen operations. *See* Ex. 6; *see also* Ex. 2, Tober Dep. Tr., 33:12-21 (Canteen Chief oversees all departments and lines of business in the Canteen). Canteen Chiefs, unlike Assistant Canteen Chiefs, "receive[] no direct day-to-day supervision and must rely on their own initiative and resourcefulness to accomplish the mission." *Id.* at 4678 (emphasis added). Further, Canteen Chiefs are assigned "the full range of personnel management responsibilities (performance standards/appraisals, scheduling, leave approval, etc.) and effect[] personnel actions…" *Id.* at 4678, 4680.

Further, pursuant to the job description, Canteen Chiefs are responsible for overseeing the inventory management process and all aspects of retail operations, overseeing the stock management program, purchasing goods, and executing and monitoring standards involving cash transactions (i.e., deposits, petty cash, cash register operations, and returned checks), including

14

conducting investigations. *Id.* at 4678. Further, the Canteen Chief oversees promotional programs and initiatives "designed to enhance sales" and implements VCS promotional programs. *Id.* The Canteen Chief oversees the food operations, including food preparation, and performs cost analysis and audits on food margins and inventories. *Id.* at 4679.  Further, the Canteen Chief is responsible for ensuring stock, inventory and cash accountability. *Id.* For administrative functions in the Canteen, the job description states that the Canteen Chief supervises personnel, assigns work, interviews and recommends selections and promotions, effects disciplinary actions, establishes work schedules, conducts on the job training, ensures compliance with collective bargaining requirements, and takes "immediate and decisive action" when necessary. *Id.* at 4680. The Canteen Chief is a FLSA exempt position. *Id.* at 4677.

> **v.** **The Same VCS Operating Procedures and Policies Govern Responsibilities of Canteen Chiefs and Assistant Chiefs Nationwide, showing that Canteen Chiefs, and not the Assistant Chiefs, are Responsible for the Overall Functioning of the Canteens**

As discussed in section C, *supra*, the same VCS "COPP" operating policies and procedures apply to all Canteen locations across the United States. These COPP documents cover a wide spectrum of VCS operations and provide detailed nationwide guidance in performing job functions. For example, COPP policies and procedures cover VCS areas of operations such as inventory management, stock management, food operations, budgeting, pay setting, human resources procedures, asset security and protection, and productivity standards. *See e.g.*, Ex. 3, Martinez Dep. Tr. at 23:9-15.

These policies detail certain roles and responsibilities of the Canteen Chief and Assistant Chief and apply uniformly to all VCS locations nationwide.

Consistent with the Canteen Chief job description as discussed in section (iv) above, these policies indicate that the Canteen Chief – and not Assistant Chief - is responsible for personnel actions, including hiring and firing, reviewing and evaluating hourly candidates and approving any personnel appointments, verifying deposit and check transactions, implementing the payroll deduction program, training canteen personnel, conducting investigations and disciplinary actions for canteen personnel, creating financial and budget action plans, among other duties as illustrated throughout these policies. *E.g.*, Ex.'s 9, 13-14 (COPP policy excerpts); *see also* Ex. 2, Tober Dep. Tr., at 120:1-3 (Canteen Chief [rather than Assistant Chief] is listed in policies because the Canteen Chief is ultimately responsible for these areas).

    a.   <u>Assistant Chiefs Perform Non-Exempt Duties, Operating under the Direction of the Canteen Chief</u>

Further, as evidenced by Plaintiff's declaration, in order to carry out her job duties on a day-to-day basis, she and other Assistant Chiefs would be called on to run registers, clean the Canteen, prepare food, restock and replenish the canteen, and assist customers in the Canteen. Smith Decl., ¶3. Plaintiff spent a significant amount of her time, an estimated ninety percent (90%), performing these duties. *Id.*

While Assistant Chiefs were also involved in training and providing guidance to employees, as specifically designated by the Canteen Chief, such duties only took up a fraction of their time. *See id.* Further, all personnel actions including hiring, firing, employee investigations and disciplinary actions, as well as budgeting oversight and financials required the authority, oversight and discretion of the Canteen Chief. *See* Ex. 2, Tober Dep. Tr., at 64:17-25, 65:6-14 (Canteen Chiefs act <u>independently</u> in hiring hourly employees), 66:9-13, 74:3-14, 81:11-14; *see also* Ex. 3, Martinez Dep. Tr. at 51:21-24. Assistant Chiefs did not have the authority to act independently in these matters. Assistant Chiefs' work was confined to the tasks and authority as

16

delegated by the Canteen Chief, and Assistant Chiefs carried out their duties in accordance with Defendant's comprehensive policies and practices from which they could not deviate. *See* Ex. 8. Assistant Chiefs perform customer service as a primary part of their job function, which can include running the cash register as necessary. Ex. 3, Martinez Dep. Tr., at 44:15-23; *see also* Ex. 2, Tober Dep. Tr., at 38:3-7 (assisting customers and customer service is a primary responsibility of Assistant Chief position).

As discussed in sections(ii)-(iv), *supra*, Canteen Chiefs, and not the Assistant Chiefs, approved all  discipline, performance reviews, and promotions, and decided who to hire in the canteen. Per Defendant's nationwide policies, Canteen Chiefs, not Assistant Chiefs, are responsible for all aspects of success of the canteen – budgeting, financials, inventory sign-off and approval, employee investigations, training on defendant's policies, managing staff, protecting VCS assets, security, and hiring/firing. While Canteen Chiefs can delegate certain tasks to Assistant Chiefs, Defendant's nationalized policies confirm that Canteen Chiefs have the control and authorization in each of these areas. The Assistant Chiefs cannot act independently where the Canteen Chiefs bear the responsibility and authority in these areas.

Unlike the Canteen Chief job description which indicates that Chiefs operate without "day-to-day" supervision, the Assistant Chief job description states that Assistant Chiefs operate under administrative supervision of the Canteen Chief. *See* Ex.'s 6, 8.

**vi.   Assistant Chiefs Work Hours over Forty Hours in a Week, without Overtime Pay, to Meet Canteen Operating Demands**

All Assistant Chiefs use the same VCS time and attendance system and are subject to the same VCS payroll system. *See* Ex. 3, Martinez Dep. Tr. at 84:10-24. Assistant Chiefs are scheduled for 40 hours in a week (8 hours in a day) as a pre-set "Tour of Duty" and receive a

salaried compensation based on this forty-hour week. Ex. 2, Tober Dep. Tr. at 99:9-18. Thus the "Tour of Duty," or time and attendance records, would generally be pre-populated to reflect an 8-hour day (40-hour workweek), and could not be adjusted except in rare circumstances if multiple layers of manager pre-approvals were obtained. *See* Ex. 2, Tober Dep. Tr. at 107:24-108:17, 109:3-20, 111:11-21; *see also* Ex. 3, Martinez Dep. Tr., at 86:14-22 (Assistant Chiefs cannot change the "tour of duty," or work schedule in the time and attendance records).

However, Assistant Chiefs were expected to work beyond the established schedule to perform all job duties. Further Assistant Chiefs' supervisors were on notice of these hours worked as Canteen Chiefs would often be present at the Canteen, would observe Assistant Chiefs coming and leaving the facility, would exchange emails with Assistant Chiefs after hours, and would communicate and assign tasks throughout the day. *See* Ex. 2, Tober Dep. Tr., at 130:25-131:8 (Assistant Chiefs generally communicate with Canteen Chiefs at end of day); *see also* Smith Decl., ¶5.

In Plaintiff's circumstance, although Defendant's computer system would reflect that Defendant pre-scheduled Plaintiff to work an eight (8) hour shift, 5 days a week, Plaintiff often worked fourteen (14) to fifteen (15) hours per day, if not more, six days a week. Smith Decl., ¶¶4-5. On more than one occasion, she worked 15 consecutive days in a row. Smith Decl., ¶4. Her work schedule would often be from approximately 6:00 or 7:00AM to 9:00 or 10:00PM. During the holiday season, or the "Golden Quarter", these hours would be even longer, and she would regularly be called in on her days off. *Id.*, ¶¶4-6 Plaintiff complained to several Canteen Chiefs and Regional Managers about these conditions, including a written complaint to Human Resources and her Regional Manager, but was told she was required to work until the job was done. *Id.*, ¶8.

Although Plaintiff worked these substantial hours and extended schedule, her preset time and attendance schedule, also referred to as the "Tour of Duty," could not be adjusted from this default schedule, which indicated only the assigned eight hour per day and forty hours per workweek. Smith Decl., ¶5. This applied consistently to all Assistant Chiefs. *See* Ex. 3, Martinez Dep. Tr. at 86:20-23 ("Tour of Duty" schedule cannot be modified by Assistant Chiefs). Thus, Plaintiff and other Assistant Chiefs did not have the ability to adjust this "Tour of Duty" to reflect their actual hours worked, absent a rare exception where they received both Canteen Chief and Regional Manager approvals with a written justification. *See* Ex 2. Tober Dep. Tr. at 109:7-20; Ex. 3, Martinez Dep. Tr., at 86:20-87:6. For Plaintiff, her time punches were always copied and pre-populated directly from her pre-set work schedule, so the hours in the time records are never accurate. Her time and attendance records always reflected only 40 hours and she was not paid overtime compensation. *See* Ex.'s 15-16 (a sample of Plaintiff's time and attendance records and wage statements during her employment, which reflect the 40-hour workweek and compensation for <u>only</u> 40 hours in a week).

### vii.   Defendant had a Common Unlawful Policy not to Pay Overtime Wages to Assistant Chiefs by Misclassifying them as Exempt from the FLSA

Defendant has a common overtime policy which applies to all Assistant Chiefs nationwide. Ex. 2, Tober Dep. Tr. at 98:11-16; *see also* Ex. 3, Martinez Dep. Tr., at 95:22-96:3; Ex. 1 (DOJ197-198). The overtime policy says that Assistant Chiefs are FLSA exempt, however, work past 40 hours is expected based on operating needs, and that payment for overtime compensation will be rare, and is <u>not</u> appropriate in most circumstances. Ex. 1, at DOJ197. The policy expressly states that work by Assistant Chiefs beyond established schedules "<u>may be necessary and is expected</u>." (emphasis added). *Id.*

19

Defendant's 30(b)(6) witness confirmed that Assistant Chiefs can only request overtime in very rare circumstances with written justification submitted to both the Canteen Chief <u>and</u> Regional Manager, and that approximately less than 5 percent of overtime pay authorized by the VCS is paid to Assistant Chiefs. *See* Ex. 2, Tober Dep. Tr. at 109:3-17, 110:8-13, 110:25-111:3 ("…if there's any overtime…that's been approved and aware of by the region managers [] it will be on the region manager's head to explain…"), 111:11-21.  Per the 30(b)(6) testimony, Assistant Chiefs who "didn't manage their time right" should not be "rewarded" with overtime pay.  *See id*. at 99:19-101:11. While only paying negligible overtime pay, Defendant's own policies, deposition testimony and Plaintiff's affidavit, confirm operating and customer service needs would require Assistant Chiefs to work past the pre-scheduled shift time, and overtime pay in these circumstances is <u>not</u> appropriate. *See* Ex. 1; *see also* Ex. 3, Martinez Dep. Tr. at 95:22-96:16 (Assistant Chiefs are salaried employees; overtime pay is <u>not</u> appropriate). Assistant Chiefs are all subject to the same overtime policy – permitting overtime only in very exceptional, emergent circumstances, and, thus, not paying overtime pay to Assistant Chiefs for the hours Assistant Chiefs were expected to, and did, routinely work over forty hours in a week.

### viii.  Assistant Chiefs were Subject to the Same VCS Pay Setting Policies

VCS policies provide specific procedures for pay-setting and govern procedures for issuing pay increases to both the Assistant Chief and Canteen Chief positions. Ex. 2, Tober Dep. Tr. at 92:15-22; 94:10-95:4; *see also* Ex. 17, VCS Grading Policy (DOJ4581-86) For example, grades of Canteen Chiefs are determined based upon the "operating structure and complexity of each canteen activity." *Id.*, at 4581. In contrast, the grading of Assistant Chiefs is not based on the operating structure, complexity or sales volume criteria, but is based on a defined formula. *Id.* at 4585-86.

ix.     **Assistant Chiefs Earned the Same Salary Pay Range, or less, than Non-Exempt Hourly Associates, like Cooks, Waiters and Janitors**

In November 2019, the VCS issued letters and pay increases to certain Assistant Chiefs on the basis that hourly-associates at the canteen were earning more than the Assistant Chiefs at the same canteen location. Ex. 2, Tober Dep. Tr., at 137:11-19, 138:1-13; Ex. 18 (example of letter issued). The VCS discovered that the compensation of hourly canteen non-exempt employees was higher than for the Assistant Chiefs in numerous canteens and the VCS then decided to audit Assistant Chief salaries to make some effort to try to correct what it recognized was a manifest injustice. *See* Ex. 2, Tober Dep. Tr., at 137:14-19. In response, the VCS issued pay increases to the Assistant Chiefs of approximately five percent. *Id.*, at 151:16-25; *see also* Ex. 17 at 4586. However, the comparison between the Assistant Chief and hourly employee pay was calculated under the incorrect assumption that Assistant Chiefs worked only forty hours a week. *See* Ex. 2, 139:24-140:2. Defendant's 30(b)(6) witness admitted the same comparative analysis, and corresponding approximate five percent pay increase to Assistant Chiefs, would not apply in circumstances when Assistant Chiefs work more than forty hours in a workweek. *See id.*, 136:6-10, 140:4-7 (only applies to 40-hour week). When these minimal pay increases were issued pursuant to these letters, Regional Managers expressed concerned about "the increase in personnel costs," which is part of the Canteen's productivity metric. *See id.* at 136:24-137:13.

Further, despite the Defendant's 30(b)(6) witness' estimate that Assistant Chiefs' salaries are set in the $60,000-$70,000 range, this letter, coupled with examples from personnel files and recent job postings, indicates that the salaries can be much lower, in the $30,000 range. *See id.* 37:24-38:2. In fact, the advertised salary range for the Assistant Manager job posting in Decatur,

Georgia,[4] is $33,208 - $35,422. *See* Ex. 10. Under the FLSA as of this year, the minimum salary

per week is $684.[5] Thus, dividing $33,208 by 52 weeks shows a weekly pay of $639 which falls

below the FLSA minimum salary requirement. Even on the highest end of this salary range, the

weekly equivalent would be $681 per week, which is still below the minimum weekly salary

required for an exempt status under the FLSA. With further discovery Plaintiff could ascertain

this claim on the merits and evaluate the proportion of individuals with salaries that fall below

the FLSA minimum requirement.

## IV.    LEGAL ARGUMENT

### A.  Legal Standard for Conditional Certification is Lenient

Employees alleging violations of their rights under the FLSA may bring a claim seeking

relief on their own behalf and on behalf of all "other employees similarly situated." 29 U.S.C. §

216(b). In the Federal Circuit, courts determine whether the plaintiffs are similarly situated to

each other by using a two-step process. *Whalen v. United States*, 85 Fed. Cl. 380, 383 (2009); *see*

*also Barry v. United States*, 117 Fed. Cl. 518, 520-51 (2014) ("the first step, which plaintiffs ask

the [c]ourt to undertake here, is known as conditional certification, and it facilitates the opt-in

process by requiring the defendant to produce the names and addresses of employees in the

proposed class and by settling the form of the notice distributed to the class.")

Under this process, the Court first makes a "preliminary determination of whether the

plaintiffs were subject to a common employment policy or plan." *Whalen*, 85 Fed. Cl. at 383; *see*

*also Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y.1997). This is called "conditional

---

[4] The 30(b)(6) witness confirmed that this job title falls within the Assistant Chief Job
Description (Ex. 7) and is an exempt-position. Ex. 2, Tober Dep. Tr., at 43:1-8, 44:10-14.
[5] 29 C.F.R. § 541.600(b).

certification." After the parties have had an opportunity to conduct further discovery and the potential plaintiffs have had an opportunity to opt in, the defendant may move to decertify a conditionally certified class. *Gayle v. United States*, 85 Fed. Cl. 72, 77-78 (2008). The second step requires the court "to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Heckler v. DK Funding*, 502 F.Supp.2d 777, 779 (N.D. Ill.2007).

At the initial stage, "Plaintiffs' burden . . . is low." *Barry*, 117 Fed. Cl. at 521. Plaintiff needs only make a "modest factual showing" that plaintiff and other putative collective action members are "similarly situated," i.e., that they share "common issues of law and fact arising from the same alleged prohibited activity." *Id.* (quoting *Gayle*, 85 Fed. Cl. at 77 and *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)) (internal alterations omitted). This analysis is "usually made under a fairly lenient standard and typically results in conditional class certification." *Mitchell v. Acosta Sales, LLC*, 841 F.Supp.2d 1105, 1115 (C.D. Cal. 2011). Plaintiff can satisfy the evidentiary burden imposed by the first step by showing that the pleadings, affidavits, and other available evidence support the conclusion that potential class members are similarly situated. *Cuzco v. Orion Builders*, 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007). All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Helton v. Factor 5, Inc.*, C 10-04927 SBA, 2012 WL 2428219, at *4 (N.D. Cal. June 26, 2012) (internal quotations and citations omitted).

At this preliminary stage, the Court does not resolve factual disputes or make credibility determinations. *Plaintiff No. 1 v. United States*, 2021 WL 1328609 *1 (Apr. 9, 2021).

Additionally, the court should not evaluate the merits of plaintiffs' claims at this first stage. *Centurioni v. City and County of San Francisco*, No. C 07-01016, 2008 WL 295096, at *2 (N.D. Cal. Feb. 1, 2008); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 368 (S.D.N.Y.2007) (In deciding whether to conditionally certify a collective action, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."). The question at conditional certification "is <u>not</u> whether plaintiffs have proven their case that there is a widespread [unlawful policy], but whether there is a reasonable basis to conclude that there are "potentially" similarly-situated class members who would "benefit" from notice." *Wellens v. Daiichi Sankyo, Inc.*, 2014 WL 2126877, at *4 (N.D. Cal. May 22, 2014) (emphasis added).

If plaintiffs meet this lenient standard, the district court "conditionally" certifies the class and facilitates the process by which putative class members are given notice and the opportunity to opt-in, with the case proceeding as a representative action throughout the course of discovery. *Carter v. Anderson Merchandisers, LP*, EDCV 08-25-VAP OPX, 2008 WL 2783193, at *2 (C.D. Cal. July 10, 2008) (conditional certification is "properly understood as a case management tool and a means by which courts can oversee and guide discovery").

Plaintiff(s) "need not submit a large number of declarations or affidavits to make the requisite factual showing," as the plaintiff(s)' declaration, or a handful of declarations, typically suffices. *Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 838 (N.D. Cal. 2010); *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. Aug. 2014) (granting conditional certification based only upon the allegations in the complaint and the proposed lead plaintiffs' affidavits stating that they have often worked more than forty hours per week without overtime pay); *Aguayo v. Oldenkamp Trucking*, CV F 04-6279 ASI LJO, 2005 WL 2436477, at *4 (E.D.

Cal. Oct. 3, 2005) (finding the complaint and the plaintiff's declaration sufficient to grant

conditional certification); *Ivery v. RMH Franchise Corp.*, 280 F.Supp.3d 1121, 1133 (N.D.

Ill.2017) (granting conditional certification based on plaintiff's and former plaintiff's

declarations); *Rees v. Souza's Milk Transp., Co.*, CVF0500297 AWI LJO, 2006 WL 738987, at

*4 (E.D. Cal. Mar. 22, 2006) (same); *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at

*11 (C.D. Cal. Jan. 31, 2012) (finding that the declarations of the two plaintiffs would be

sufficient to satisfy the plaintiffs' "lenient" burden); *Romero v. Producers Dairy Foods, Inc.*, 235

F.R.D. 474, 482-83 (E.D. Cal. 2006) (two declarations sufficient to grant conditional

certification).

 After Plaintiff is provided with a list of potential opt-ins, and notices are sent out, the

Parties will be able to more fully explore the factual and employment situation of any opt-ins that

will be appropriate for the more searching "similarly situated" requirement under the second-tier

analysis. *Leuthold*, 2274 F.R.D. 462 at 468 (recognizing that when relevant facts have not been

fully explored the court should defer to the first-tier analysis and that "[t]he number and type of

plaintiffs who choose to opt into the class may affect the court's second tier inquiry regarding the

disparate factual and employment situations of the opt-in plaintiffs, as well as fairness and

procedural issues.").

## B. Plaintiff Satisfied her Minimal Burden for Conditional Certification

 Here, Plaintiff, through her affidavit, Defendant's 30(b)(6) testimony, nationwide job

description, policies and procedures, has met (or exceeded) the required "modest factual

showing" that there are "common issues of law and fact arising from the same alleged

[prohibited] activity." *Barry*, 117 Fed. Cl. at 521 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

First, Plaintiff alleges she is a part of a group of over 400[6] Assistant Chiefs at the VCS who are or were classified as exempt from the FLSA during the relevant time period. *See* Ex., 4.

Second, Plaintiff and Assistant Chiefs share common issues of law, including whether they were classified as exempt from the FLSA, whether they were improperly classified as exempt because they did not meet a FLSA exemption, and whether Assistant Chiefs were not compensated at an overtime rate of one- and one-half times the regular rate of compensation for hours they worked over forty (40) in a workweek. As outlined in section C, *supra*, Plaintiff has presented significant evidence at this stage that these legal issues are subject to common evidence, meeting or exceeding the preliminary determination of whether Plaintiff and Assistant Chiefs "were subject to a common employment policy or plan." Here, Plaintiff has presented evidence of the common FLSA exempt classification as applied to all Assistant Chiefs, the universal job description, uniform job postings for the Assistant Chief position as advertised throughout the United States, which show common job duties, and the policies and procedures which apply to all VCS canteens nationwide. *See* section C, *supra*. Further, the Assistant Chief position is sufficiently similar to warrant the uniformly applied exempt classification and job description. *See* Ex. 2, Tober Dep. Tr. at, 34:24-35:10, 122:19-24.

Third, where Plaintiff has presented evidence of the common exempt status, job description and policies and procedures, that is sufficient to grant conditional certification. *See Waggoner v. U.S. Bancorp*, 110 F.Supp.3d 759, 771-72 (N.D. Ohio 2015) ("...the Court finds that the declarations, along with the job postings [describing "virtually identical" job duties], support a preliminary finding of a company-wide policy. The fact that the job postings both

---

[6] *See* footnote 2.

contained certain managerial functions does not diminish their value at this early stage.") Issues

of the applicability of a FLSA exemption, and consideration of individualized defenses, are also

premature at this stage. *See Meyer v. Panera Bread Co.*, 344 F.Supp.3d 193, 207-08 (D.D.C.

2018) "(In short, [a]lthough defendants often argue that the necessity of fact-intensive

individualized inquiries will render a collective action unmanageable, courts tend not to consider

such arguments at the conditional certification stage, and, instead, put these issues off until the

decertification stage, when discovery is complete.) (internal quotations omitted); *see also Ivery*,

280 F.Supp.3d at 1137 ("applicability of FLSA exemptions typically is not addressed during step

one of the certification analysis.") Moreover, defendants may not defeat a court's determination

that plaintiff(s) are similarly situated to potential opt-in plaintiffs by submitting their own

affidavits. *See Varghese v. JP Morgan Chase & Co.*, 2016 WL 4718413 *7 (S.D.N.Y. Sept. 8,

2016). Plaintiff is not required to prevail on the merits at this stage, and here, has met (or

exceeded) her burden in showing significant commonality through a common employment

policy and plan.

  This Court and others have recognized that individuals deprived of overtime pay due to

an alleged misclassification have been subject to a common policy for purposes of conditional

certification. *Barry*, 117 Fed. Cl. at 522; *see also Doe No. 1 v. United States*, 143 Fed. Cl. 113,

116 (2019) (granting nationwide certification to a group of FBI employees who occupied the

same positions and job series and who alleged that they were misclassified as FLSA-exempt);

*Schaefer v. M&T Bank Corp.*, 122 F.Supp. 3d 189, 195, 199 (S.D.N.Y. 2015) (granting

nationwide certification to plaintiffs in two job titles where plaintiff showed that all employees

with these job titles shared the same job duties and were classified as FLSA-exempt); *Aros v.

United Rentals, Inc.*, 269 F.R.D. 176, 183–85 (D. Conn. 2010) (granting nationwide certification

to all employees in the same job title where plaintiff showed that all employees in this job title shared a common job description and were classified as FLSA-exempt).

For example, in *Barry v. United States*, 117 Fed.Cl. 518 (2014), the Court granted conditional certification, basing its decision on the common, nationwide policies, despite Defendant's objection that variations existed from location-to-location and supervisor-to-supervisor. The Court distinguished cases where the Plaintiff has not presented evidence of a nationwide policy, confirming that conditional certification is warranted where the Plaintiff has presented evidence of that the FLSA exemption is based on the nationwide policy:

> …employees in the designated positions were subject to a nationwide policy under which they are not compensated at FLSA-required overtime rates because their positions had been, on a nationwide basis, designated FLSA exempt. Variations in the methods of timekeeping or assigning overtime work from region to region or supervisor to supervisor have no apparent bearing on the adjudication of the liability issues that are common to the proposed nationwide class, which are based on that nationwide policy.

> The cases cited by the government in support of this objection, [] are easily distinguishable from this one. **In those cases, certification was denied because the plaintiffs failed to provide any evidence of the existence of a nationwide policy that affected all members of the class.** *See Gayle*, 85 Fed.Cl. at 78–79 (conditional class certification denied because plaintiffs failed to provide any evidence of a nationwide policy of denying overtime compensation to per diem nurses at the VA); *Briggs v. United States*, 54 Fed.Cl. 205, 206–07 (2002) (no conditional class certification based on claim that Census employees in a number of locations had been denied FLSA overtime pay where there was no allegation of a common management practice or policy that served as the basis for the denial of such pay). **By contrast, in this case, the government does not deny that the decision to exempt these employees' positions from the FLSA was based on a nationwide policy.**

*Id.* at 522 (emphasis added).

Similarly, here, Defendant cannot dispute that Assistant Chiefs were classified as FLSA exempt based on the same nationwide job description and policies, and Defendant's 30(b)(6) witness admitted the classification decision was universal to all Assistant Chiefs. Ex. 2, Tober Dep. Tr., at 122:19-24; *In re Third Party Subpoenas Issued to Rambus, Inc*., 2014 WL 12616734

(N.D. Cal. Dec. 5, 2014) (the agency is bound by 30(b)(6) deponent testimony). Defendant admits its classification decision was based on this universal job description, which Defendant confirms applies to all Assistant Chiefs in all locations throughout the United States regardless of grade, size of facility, or geographical location. *See* Ex. 19, Defendant's Second Set of Interrogatory Responses, dated January 25, 2021, at Response No. 15, upon request to identify any documents Defendant relied on in making the decision to classify Assistant Chiefs as exempt from overtime compensation: ("…defendant is producing non-privileged classification of the assistant canteen manager position documents that are responsive to this request, bearing bates numbers DOJ140 through DOJ145 [Assistant Chief Job Description]); *see also* Ex. 2, Tober Dep. Tr. at 122:19-24. Further, Defendant's detailed operating procedures and policies which inform the responsibilities of Canteen Chiefs and Assistant Chiefs apply uniformly to all VCS locations in the United States. Ex. 2, Tober Dep. Tr. at 72:2-11.

This is sufficient evidence for the conditional certification stage, where Plaintiff has demonstrated evidence of a common employment policy and plan, and evaluation of the claims on the merits is not yet appropriate. *E.g.*, *Lynch*, 491 F.Supp.2d at 368. After further discovery, and once notice has been issued to the collective action members so that they may be given the opportunity to opt-in to the action, the Defendant will have an opportunity to move to decertify the action if warranted.

## C. The Court should Order Notice to all Assistant Chiefs who Worked for Defendant within the past Three Years

The typical two-year statute of limitations for a FLSA violation is extended to three years where the violation is "willful." *See* 29 U.S.C. § 255(a). An employer's violation is willful not only if it knowingly violated the FLSA but also if it "disregarded the very possibility that it was

violating the statute." *Alvarez v. IBP, Inc*., 339 F.3d 894, 908 (9th Cir. 2003).  Where plaintiffs have made allegations of willfulness, courts generally will not limit the potential class at the conditional certification stage. *See, e.g., Centurioni*, 2008 WL 295096, at *3 ("the Court will not prematurely limit the potential class to those employed during a two-year period"); *Adams v. Inter-Con Sec. Sys., Inc.,* 242 F.R.D. 530, at 542 (N.D. Cal. 2007) ("the court will not make a determination of willfulness at this early stage and declines to limit the scope of notice to officers employed in the last two years"). In conditionally certifying a collective action under the FLSA, courts generally apply the longer limitations period. *Gayle v. U.S*., 85 Fed.Cl. at 80 (citing *Goudie v. Cable Commc'ns., Inc.,* 2008 WL 4628394, at *8-9 (D. Or. Oct. 14, 2008); *Roebuck v. Hudson Valley Farms, Inc.,* 239 F.Supp.2d 234, 240 (N.D.N.Y. 2002)).

Here, the three-year notice period should apply at the conditional certification stage based on Plaintiff's allegation of willfulness (*see e.g.*, *Centurioni*, 2008 WL 295096, at *3), but, additionally, Plaintiff has presented sufficient evidence of Defendant's willfulness to warrant sending notice to Assistant Chiefs based on a three-year statute of limitations:

First, Defendant's 30(b)(6) witness admitted that Defendant did not survey or track job duties Assistant Chiefs were performing nor did it interview Assistant Chiefs to obtain information on the job duties they perform on a daily basis, particularly as compared to the job duties that the Canteen Chiefs perform. *See* Ex. 2, Tober Dep. Tr. at, 126:14-20. As such, Defendant has disregarded the possibility that it could be violating the FLSA based on Assistant Chiefs' job duties.

 Second, Defendant's 30(b)(6) witness confirmed that on November 1, 2019 (after this lawsuit was filed) the VCS authorized minimal pay increases for Assistant Chiefs who were making less than hourly-paid, non-exempt associates employed by the VCS. *See id.* at 137:11-19,

138:1-13, 151:16-25; *see also* Ex. 18 (example of November 1, 2019, letter authorizing pay increase to an Assistant Chief making less than non-exempt hourly associate). In order to conduct the pay comparison between the Assistant Chief and hourly associate position, the incorrect assumption was made that Assistant Chiefs worked 40 hours per week, without any attempt to investigate the hours that Assistant Chiefs actually worked in the course of their job duties. *See* Ex. 2, Tober Dep. Tr., at 136:6-10, 139:24-140:2. This comparative pay analysis is no longer correct where Assistant Chiefs worked over forty hours in a workweek. *See id.*, 140:4-7.

Third, the fact that VCS policies authorize overtime pay in "emergency" circumstances, further supports the willfulness of Defendant's misclassification of Assistant Chiefs.  Properly classified exempt employees are not subject to, and do not receive, overtime pay. Here, Defendant provides for some irregular and minimal overtime payments in emergent situations, subject to multiple layers of pre-approval, tacitly admitting Assistant Chiefs are not properly classified as exempt employees. Further, as discussed in section (ix), *supra*, the VCS set Assistant Chief salaries at levels which often equated to the hourly-associated pay rate, but classified the Assistant Chiefs as exempt, whereas hourly-associates are non-exempt employees and would receive overtime pay. The close proximity of the pay rates between the exempt and non-exempt employees, and authorizing overtime pay for Assistant Chiefs in only emergent circumstances, while providing overtime pay for non-exempt employees, further supports the willfulness of the misclassification. Finally, as discussed in section (ix), *supra*, evidence shows that at least some of the salaries provided to Assistant Chiefs fall below the FLSA threshold. Where it is Defendant who issues these salaries and maintains salary records, Defendant's disregard of the fact some of these salaries do not meet FLSA requirements, is willful. This evidence warrants the application of the three-year statute of limitations, particularly at this preliminary stage of litigation.

By ordering notice pursuant to a three-year statute of limitation now, no further notice need be mandated later, and, most importantly, no potential opt-in plaintiffs will have forsaken the opportunity to timely assert their claims.  *See* 29 U.S.C. § 256 (FLSA statute of limitation tolled for a collective action member when he or she files his or her consent-to-join form).

**D.  Discovery of Contact Information of the Potential Plaintiffs is Necessary to Carry Out Notice**

Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action," the FLSA grants the Court authority to manage the process of joining such employees in the action, including the power to authorize notice and monitor preparation and distribution of the notice. *Hoffmann-La Roche, Inc.*, 493 U.S. at 170. Courts routinely order defendants to produce contact information for all potential plaintiffs in conjunction with conditional certification; indeed, Plaintiff would have no way to facilitate distribution of the Court-ordered notice without that contact information. *See, e.g., Mitchell*, 841 F.Supp. 2d at 1120 (directing the defendant to produce names, last known addresses, telephone numbers, job titles, and last known email addresses for all persons within the proposed class for the previous three years); *Adams*, 242 F.R.D. at 540 (ordering the defendant to submit contact information of potential plaintiffs to plaintiffs' counsel). Further, the Parties already have an agreed upon Court protective order on file in this action, and thus Assistant Chief contact information would be provided in accordance with the protective order. *See* ECF No. 15.

Accordingly, to facilitate the sending of the notice and consent forms, Plaintiff also moves the Court to direct Defendant to provide, in electronic format, the names, last known addresses, telephone numbers, job titles, and last known email addresses of all potential opt-in plaintiffs:

who include all persons who worked as Assistant Chiefs for Defendant in the United States at any time within the applicable statutory time period through the present. Plaintiff asks that the Court order Defendant to produce this contact information no later than two weeks after entry of the Order conditionally certifying this collective action.

**E.   Plaintiff's Proposed Notice is Appropriate and should be Mailed to Potential Plaintiffs and Posted at Defendant's Canteen Facilities**

The proposed Notice of Pendency of Action and accompanying Consent to Join as an Opt-In Plaintiff, attached as Exhibits 20 and 21 to Plaintiff's Appendix should be adopted as the Court-authorized notice and consent form, as they achieve the ultimate goal of providing current and former Assistant Chiefs with accurate and timely notice concerning the pendency of the collective action.  In addition to being mailed to all potential plaintiffs, the proposed Notice should be posted at all potential plaintiffs' work locations and distributed with current employees' next paycheck. Courts have frequently approved the posting of the FLSA notice under similar circumstances.  *See, e.g., Romero*, 235 F.R.D. at 493 (finding "that first class mail, combined with posting in [potential plaintiffs'] workplaces, provides the "best notice practicable" to the potential class"); *Adams*, 242 F.R.D. at 541-42 (ordering that, in addition to mailing, notice be posted at all locations with fifteen or more potential plaintiffs).

Further, the notice is neutral in character. *See e.g., Barry*, 117 Fed. Cl. at 523–26; *see also Gayle*, 85 Fed. Cl at 81–84; *Whalen*, 85 Fed. Cl. at 389–92. By its terms, the notice "avoid[s] even the appearance of judicial endorsement of the merits of the action." *Gayle*, 85 Fed. Cl. at 80 (quoting *Hoffman-LaRoche*, 493 U.S. at 174). Further, it: (1) informs potential plaintiffs that they may be deposed or required to testify; (2) sets out the arrangements for attorneys' fees and costs; and (3) notifies potential plaintiffs that they are free to file their own lawsuit. *See id.* at 81.  Thus,

Notice should be authorized.

**F. The Court should Equitably Toll the Statute of Limitations for all Potential Plaintiffs**

As noted above, the FLSA requires that individual plaintiffs in a collective action file valid consents to opt-in within the applicable statute of limitations.  29 U.S.C. § 256(b).  Because the statute of limitations under the FLSA continues to run until a collective action member files a consent to-join-form, courts have used equitable tolling to protect individuals who "have yet to receive notice of the action due to defendant's refusal to supply potential plaintiffs' contact information to the named plaintiffs."  *Adams*, 242 F.R.D. at 543.  As the *Adams* court recognized, equitable tolling "counters the advantage defendants would otherwise gain by withholding potential plaintiffs' contact information until the last possible moment."  *Id.*  In that case, the court equitably tolled the statute of limitations beginning thirty days from the date that the plaintiffs first requested contact information for putative collective action members.  *Id.*  This limited sort of equitable tolling is so non-controversial that defendants in other cases have even stipulated to it.  *See, e.g., Mowdy v. Beneto Bulk Transp.*, C 06-05682 MHP, 2008 WL 901546, at *12 (N.D. Cal. Mar. 31, 2008); *see also Mitchell,* 841 F.Supp. 2d at 1120 (granting the plaintiffs' request to toll the statute of limitations to the date of the conditional certification order because the plaintiffs "have diligently pursued their legal rights and are without fault for the delay").

Here, Plaintiff requested the contact information for all putative collective action members in Request No. 5 of Plaintiff's First Set of Request for Production of Documents on March 13, 2020.  *See* Ex. 22.  Because Plaintiff has diligently pursued her entitlement to this information and is without fault for the delay, the Court should equitably toll the statute of limitations beginning April 13, 2020—thirty days from the date the contact information was initially requested—until

the deadline for collective action members to opt-in.

## V.    CONCLUSION

For all of these reasons, Plaintiff respectfully requests that the Court conditionally certify the collective action of Assistant Chiefs employed with the VCS, all of whom were uniformly classified as FLSA exempt, within the past three years from the date of the Notice. Plaintiff further asks the Court to approve the proposed notice, order the proposed procedure, and issue a tolling order.

Respectfully submitted,

s/ David R. Markham
David R. Markham
*dmarkham@markham-law.com*
Maggie Realin
*mrealin@markham-law.com*
Lisa Brevard
*lbrevard@markham-law.com*
**THE MARKHAM LAW FIRM**
8910 University Center Lane, Suite 400
San Diego, CA 92122
Telephone: (619) 399-3995
Facsimile: (619) 615-2067

Walt Pennington
Pennington Law Firm
3302 30th Street
San Diego, CA  92104
Telephone: (619) 940-6157

Stephen B. Morris
The Law Offices of Stephen B. Morris
444 West C Street, Suite 300
San Diego, CA  92101
Telephone: (619) 239-1300
Facsimile: (619) 374-7082

Dated: June 4, 2021

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of June 2021, the foregoing ***MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE*** was electronically filed with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record who have enrolled and registered for receipt of filings via the Court's ECF system.

  /s/ Leeanna Carcione