## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PETRINA SMITH, individual, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 19-1348C Judge Carolyn N. Lerner |
| UNITED STATES OF AMERICA | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE

David R. Markham
*dmarkham@markam-law.com*
Maggie Realin
*mrealin@markham-law.com*
Lisa Brevard
*lbrevard@markham-law.com*
THE MARKHAM LAW FIRM
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (619) 399-3995
Facsimile: (619) 615-2067

Walt Pennington
*wpennington@pennfirm.com*
Pennington Law Firm
3302 30th Street
San Diego, CA  92104
Telephone: (619) 940-6157

Stephen B. Morris
The Law Offices of Stephen B. Morris
444 West C Street, Suite 300
San Diego, CA  92101
Telephone: (619) 239-1300
Facsimile: (619) 374-7082

*Attorneys for Plaintiff*

1

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 5

II.   PROCEDURAL HISTORY ..................................................................... 6

III.  FACTS ...................................................................................................... 7

   A.  Collective Action Members' Roles and Job Duties ............................ 7

   B.  VCS Exercises Centralized Control and Issues Common Policies for all ACCs in its Canteens Nationwide ................................................................... 13

IV.   LEGAL ARGUMENT ........................................................................... 14

   A.  The Standard for Conditional Certification is Lenient, and Favors Certification .............. 14

   B.  Plaintiff Has Met – and Exceeded – the Standard to Grant Conditional Certification ...... 15

   C.  Nationwide Opt-In Consents Should be Permitted to be Filed and Tolling of Statute of Limitations from the Date the Court Issued Order Striking Opt-In Consent Forms is Proper 19

   D.  Notice Should be Issued to ACCs Who Worked in the Past Three Years Nationwide ..... 22

   E.  The Court Should Order Defendant Produce Contact Information Necessary to Carry Out Nationwide Notice ........................................................................... 22

V.    CONCLUSION ...................................................................................... 23

## TABLE OF AUTHORITIES

### Cases

*Amador v. Morgan Stanley & Co.* 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013)............................ 16

*Arciello v. Cty. of Nassau*, 2019 WL 4575145 (E.D.N.Y. Sept. 20, 2019) ................................. 22

*Augustyniak v. Lowe's Home Ctr., LLC*, 2016 WL 462346 (W.D.N.Y. Feb. 8, 2016)................ 21

*Brown v. Barnes and Noble, Inc*., 2018 WL 3105068 (S.D.N.Y. June 25, 2018) ....................... 22

*Centurioni v. City and Cty of San Francisco*, 2008 WL 295096 (N.D. Cal. Feb. 1, 2008).... 15, 22

*Cowan v. Nationwide Mut. Ins. Co.*, 2019 WL 4667497 (S.D. Ohio Sept. 25, 2019)................. 17

*Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742 (M.D. Tenn. 2018) ....................................... 16

*Cuzco v. Orion Builders*, 477 F.Supp.2d 628 (S.D.N.Y. 2007).................................................... 15

*Doe No. 1 v. United States*, 143 Fed. Cl. 113 (2019)................................................................... 17

*Flood v. Carlson Restaurants Inc.*, 2015 WL 260436 (S.D.N.Y. Jan. 20, 2015)........................ 19

*Gayle v. United States*, 85 Fed. Cl. 72 (2008) ...................................................................... 14, 22

*Gonyer v. Vane Line Bunkering, Inc.*, 32 F. Supp.3d 514 (S.D.N.Y. 2014)................................ 21

*Guttentag v. Ruby Tuesday, Inc.*, 2013 WL 2602521 (S.D.N.Y. June 11, 2013)........................ 18

*Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835 (N.D. Cal. 2010)........................................... 17

*Heckler v. DK Funding*, 502 F.Supp.2d 777 (N.D. Ill.2007)....................................................... 14

*Heibel v. U.S. Bank Nat. Ass'n,* 2012 WL 4463771 (S.D. Ohio Sept. 27, 2012 ......................... 19

*Higgins v. Bayada Home Health Care, Inc.*, 2018 WL 8368874 (M.D. Pa. May 11, 2018)........ 18

*Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193 (D.D.C. 2018)................................................ 16

*Mitchell v. Acosta Sales, LLC*, 841 F.Supp.2d 1105 (C.D. Cal. 2011)................................... 14, 23

*Myers v. Hertz Corp*., 624 F.3d 537, 555 (2nd Cir. 2010)........................................................... 21

*Pendlebury v. Starbucks Coffee Co*., 2005 WL 84500 (S.D. Fla. Jan. 3, 2005).......................... 19

*Stevens v. HMSHost Corp.*, 2012 WL 13098466 (E.D.N.Y. 2012).............................................. 16

*Vasto v. Credico (USA) LLC*, 2016 WL 2658172 (S.D.N.Y. May 5, 2016)................................. 18

*Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759 (N.D. Ohio 2015) ........................................... 19

*Wellens v. Daiichi Sankyo, Inc.*, 2014 WL 2126877 (N.D. Cal. May 22, 2014)......................... 15

## Statutes

29 U.S.C. § 216(b) .................................................................................................................... 14

29 U.S.C. § 256.......................................................................................................................... 19

## I.   INTRODUCTION

Plaintiff renews her motion for nationwide conditional certification of the FLSA claims alleged by Assistant Chiefs ("ACCs") employed at Veteran Canteen Services ("VCS") throughout the United States, and requests that the Court issue notice to ACCs nationwide to enable them to opt-in to this action. On October 15, 2021, the Court denied Plaintiff's motion for nationwide conditional certification <u>without prejudice,</u> on the basis that Plaintiff had not provided sufficient information on the day-to-day experiences of ACCs outside of Plaintiff's canteen locations. (Dkt. No. 33, "Order"). At the hearing, **Defendant conceded that as few as nine declarants nationwide is sufficient for this Court to grant Plaintiff's motion for nationwide conditional certification**. Ex. 1, at pp. 20:15-21:12.[1] Plaintiff now submits 13 ACC declarations from 22 different canteens throughout the country, including in California, Texas, Washington, Connecticut, Louisiana, Pennsylvania, Massachusetts, and Washington, D.C., which confirm these individuals are similarly situated to Plaintiff and other employees from currently certified Menlo Park and Palo Alto locations. Each declaration is evidence of defendant's *de facto* policy and practice of classifying ACCs as exempt, while they spent 80-90% of time performing non-exempt tasks and worked unpaid overtime hours. Plaintiff also submits a declaration of a canteen chief from Seattle, Washington, who confirms ACCs primarily perform non-exempt work and work long hours. Based on Plaintiff's new ample evidence, which supplies the missing link of the similar, day-to-day experiences of ACCs in canteens nationwide, Plaintiff's renewed motion is now ripe for the Court to grant nationwide conditional certification so that notice may be issued to ACCs nationwide.

Plaintiff's evidence meets – or exceeds – the conditional certification standard, and as ample

---

[1] All Exhibits are provided in Plaintiff's Appendix, submitted concurrently with this motion, unless stated otherwise.

case law shows, declarations from a sampling of locations throughout the country is sufficient to warrant a **nationwide** conditional certification. Plaintiff respectfully requests her renewed motion is granted.

## II.    PROCEDURAL HISTORY

Plaintiff filed her nationwide FLSA collective action complaint on September 4, 2019, alleging that the Veterans Canteen Service misclassified her and other ACCs as FLSA-exempt, and did not pay them overtime compensation for hours worked over 40 in a week. Dkt. No. 1. The Parties engaged in discovery, which was delayed in light of the COVID-19 pandemic and corresponding agency delays in producing necessary documents and information. After conducting written discovery, 30(b)(6) and fact witness depositions, Plaintiff filed her motion for nationwide conditional certification on June 4, 2021. Dkt. No. 25. At Plaintiff's motion hearing on September 28, 2021, the Court granted conditional certification for the locations where Plaintiff worked (Menlo Park and Palo Alto, California). The Court denied Plaintiff's motion for nationwide conditional certification - without prejudice - on the basis that Plaintiff had not yet provided declarants from other locations, and that "courts typically require evidence beyond the plaintiff's own experience in an isolated location to determine that employees are similarly situated across the country." Order at p. 17. On November 12, 2021, Plaintiff brought a motion to compel Defendant to produce contact information for a sampling of ACCs nationwide. Dkt. No. 34. On January 20, 2022, the Court denied Plaintiff's motion to compel on procedural grounds, but stated that Plaintiff could conduct her own investigation:

> [Defendant] makes the point that Plaintiff can take on their own investigation, and this is really what I meant when I denied the previous motion without prejudice. Ms. Brevard, if your team contacts folks and you come back to me and say, look, I have some people from different parts of the country or, you know, another city or another state, et cetera, come back to me and … we'll…potentially…open this case to that jurisdiction.

Ex. 2, Tr. at 27:10-22.  Indeed, in ruling on Plaintiff's original motion for conditional certification the Court stated that Plaintiff can renew her motion upon such evidence from ACCs regarding their day-to-day experiences at other canteens. Ex. 1, Tr. at 46:21-47:1; *see also* Ex. 2, Tr. at 27:15-22.  Plaintiff now brings her renewed motion for conditional certification with evidence from 13 declarants, in addition to Plaintiff, in 22 canteens across the country who attest to similar experiences of being required to work overtime hours, without pay, and spending the majority of their time performing non-exempt, manual tasks at their respective canteens.

### III.   FACTS

#### A.  Collective Action Members' Roles and Job Duties

The VCS provides food and retail services to veterans and their family members, employing approximately 3,600 employees nationwide at approximately 180 Canteen locations throughout the United States. Ex. 3, Tr. at 17:10-11, 24:3-6. The Canteen locations are divided in 15 regions, with each region having 10 to 20 canteens. Ex. 4. Each canteen is managed by the Canteen Chief, which position is also governed by the same job description at all VCS locations. Ex. 3, Tr. at 32:21-33:1; 34:13-18; Ex. 5. The VCS employs over 400 ACCs. *See* Ex. 4. Plaintiff's declarants include current and former ACCs employed in the last three years **at various canteens nationwide**, including several locations in California (Los Angeles, Loma Linda, Martinez, Fresno and San Francisco) and Massachusetts (Boston, Bedford, Brockton and West Roxbury); Washington D.C.; Waco, Texas; Seattle and Tacoma, Washington; New Orleans, Louisiana; Pittsburgh, Pennsylvania, and West Haven, Connecticut. Additionally, one declarant, Cherise Carter, worked at 11 different locations for shorter periods of time, including Eugene and White City, Oregon; Boise, Idaho; Poplar Bluff, Missouri; Monterey, California; Harlingen, Texas; and

Las Vegas, Nevada. Carter Decl., ¶3.[2]

    i.    <u>Nationwide Declarants Confirm 80-90% of ACC's Time is Spent Performing Non-</u>

        <u>Exempt, Manual Work to Provide Services to Canteen Customers</u>

All ACC declarants state that they spend the vast majority of each day performing non-exempt, manual duties for the canteen. Plaintiff's canteen chief witness, whose declaration is submitted concurrently with this motion, confirms that "the majority of the time worked by…[ACCs is] general work otherwise performed by non-exempt personnel." Flagman Decl., (Seattle, WA), ¶3. These duties include: cleaning and sanitizing the canteen, cooking, preparing and serving food to patrons, ringing the cash register, working as a barista making coffee, and other similar job duties. *See, e.g.*, White Decl., (Seattle and Tacoma, WA), ¶3 ("[M]y job duties included preparing, cooking, and serving food to canteen customers,  operating the cash registers, customer service at the counter, stocking the stores, and cleaning  and sanitation, working as a barista at Starbucks."). As one declarant explains it, "I was detailed to the kitchen, where I prepared food, washed dishes, and cleaned. I had very little time during a regular workday while performing these services to do anything else." Cannary Decl., (Waco, TX), ¶3; *see also* McCague Decl., (Pittsburgh, PA), ¶4 (has been breakfast and lunch cook); Davis Decl., (Washington, D.C.), ¶2 (70% of time spent performing manual tasks); Webb Jr. Decl., (Los Angeles, CA), ¶3 (80% of time on manual tasks); White Decl., (Tacoma and Seattle, WA), ¶3 (same); Conn Decl., (West Haven, CT), ¶3 (same); Carter Decl., (multiple California locations), ¶5 (same); Quintero Decl., (Seattle, WA), ¶3 (same); Little Decl., (Loma Linda, CA), ¶3 (same), Cooper Decl., (New Orleans, LA), ¶3 (also 80%); Bartoni Decl., (Palo Alto/Menlo Park, CA), ¶3

---

[2] All declarations of ACCs, including Plaintiff Smith, are attached to Plaintiff's Appendix as Exhibit 11 in an alphabetical order.

(most of the time spent on manual tasks).

The small proportion of time which ACCs spent on managerial-type tasks made up only a fraction of their day, typically one to two hours. *See, eg.* Little Decl., (Loma Linda, CA), ¶3 ("I would only spend one to three hours per day, out of a ten, twelve, even sometimes a fourteen-hour shift, on managerial tasks."); *see also* Cannary Decl., (Waco, TX), ¶3 (1-2 hours per day spent on managerial tasks); Webb Jr. Decl., (Los Angeles, CA), ¶3 (same); White Decl., (Seattle and Tacoma, Washington), ¶3 (same); Do Decl., ¶2 (Loma Linda, CA), ¶3 (1-3 hours); Cacciagrani Decl., (multiple locations in Massachusetts), ¶3 (same); McCague Decl., (Pittsburgh, PA), ¶4 (1-2 hours).

ii.    ACCs Work Overtime Hours, over 40 in a Week

ACCs in various locations around the United States routinely work over 40 hours in a week. A canteen chief confirms this: "I witnessed the Assistant Chiefs performing long hours at the various locations I worked, just as I had done while I was an Assistant Chief." Flagman Decl., (Seattle, WA), ¶5. On average, these hours can range from 50, to even 70 or 80 hours per week. *See, e.g.*, Cannary Decl., (Waco, TX), ¶4 ("I was supposed to work eight hours per day, but I was often working up to 12 to 14 hours per day, 5 days per week.  There were many weeks when I worked up to eighty (80) hours per week."); *see also* Davis Decl., (Washington, D.C.), ¶4 (worked up to 14 hours per day, six times per week); Webb Jr. Decl., (Los Angeles, CA), ¶4 (worked up to 15 hours a day and up to 8 hours on Saturdays); Conn Decl., (West Haven, CT), ¶4 ("I was often working 10 to 12 hours per day.  On Tuesdays, I often came in at 4 a.m. and worked at least a 12-hour day."); White Decl., (Tacoma and Seattle, WA), ¶4; Cooper Decl., (New Orleans, LA), ¶4 ("I am often working 10 to 12 hours, as are the other ACCs"); Do Decl., (Loma Linda, CA), ¶5 (typically worked up to 50 hours a week); Cacciagrani Decl., (multiple locations in

Massachusetts), ¶¶4-5 (typically works 55-60 hours per week, including on weekends).

Declarants attest that these hours are necessary because they spend 80-90% of time performing manual tasks to serve the canteen's customers. *See* section (i), above. Additionally, the VCS' overtime policy, which applies to all ACCs in the United States, indicates that work past forty hours is expected based on operating needs, and that payment for overtime compensation is not appropriate in most circumstances. Ex. 6; *see also* Ex. 7, Tr. at 95:22-96:16 (overtime pay not appropriate for salaried ACCs). <u>All</u> Declarants confirm they were not paid any overtime for work in excess of 40 hours per week, even though Canteen Chiefs and District Managers knew about the actual length of their shifts, and actually expected them to work long hours, over 50 in a week. *See* Davis Decl., (Washington, D.C.), ¶7 ("[W]e were informed by leadership that Assistant Chiefs and Chiefs needed to work at least 50 hours per week."); *see also* Webb Jr. Decl., (Los Angeles, CA), ¶¶6, 9 ("I did not receive overtime pay for the hours that I worked over 40 hours in a week…I was also told that we were all expected to work at least 50 hours per week, and that was just the way it was."); White Decl., (Seattle and Tacoma, WA), ¶7 ("I complained about my hours to the Regional Manager, Dwayne Finkley, who simply informed me that 50 hours were required, and more was often needed on top of that minimum."); Cooper Decl., (New Orleans, LA), ¶5 ("The Canteen Chief has been aware of the hours we are working and would often see when we are arriving and leaving the canteen…"); Quintero Decl., (Seattle, WA), ¶6; Conn Decl., (West Haven, CT), ¶5; Do Decl., (Loma Linda, CA), ¶5; Cacciagrani Decl., (multiple locations in Massachusetts), ¶5; McCague Decl., (Pittsburgh, PA), ¶¶5-6; Bartoni Decl., (Palo Alto/Menlo Park, CA), ¶6.

iii.   <u>ACCs Cannot Edit the "Tour of Duty" to Reflect Actual Hours Worked</u>

ACCs receive a work schedule, also known as a "tour of duty." Although the tour of duty

shows that ACCs are scheduled for eight-hour days, and forty hours in a week, this does not reflect reality. Ex. 7, Tr. at 86:14-22 (Assistant Chiefs cannot change the "tour of duty."). Declarants confirm ACCs cannot update the tour of duty to the hours they are actually working, which typically exceed 50 or 60 in a week. *See, e.g.,* Davis Decl., (Washington, D.C.), ¶6 ("I was not able to change my preset schedule to show the hours I actually worked."); *see also* Cannary Decl., (Waco, TX), ¶5; Webb Jr. Decl., (Los Angeles, CA) ¶6; White Decl., (Tacoma and Seattle, WA), ¶6; Conn Decl., (West Haven, CT), ¶6; Carter Decl. (multiple locations in CA and other states), ¶6; Quintero Decl., (Seattle, WA), ¶6; Cooper Decl., (New Orleans, LA), ¶5; Do Decl., (Loma Linda, CA), ¶5, Cacciagrani Decl., (multiple locations in Massachusetts), ¶5; McCague Decl., (Pittsburgh, PA), ¶¶5-6; Bartoni Decl., (Palo Alto/Menlo Park, CA), ¶6.

### iv.  ACCs are Universally Classified as FLSA-Exempt, do not Receive Overtime Pay

All ACCs are classified as FLSA exempt and subject to the same VCS policies. Ex. 3, Tr. at 122:19-24. Because they are exempt employees, ACCs do not receive overtime pay for the extended hours that they work over 40 in a week. <u>All</u> Declarants confirm this. *See, e.g*, Conn Decl., (West Haven, CT), ¶5 ("I  did not receive overtime pay for the hours that I worked over 40 hours in a week."); Cooper Decl., (New Orleans, LA) ¶5 (same); Quintero Decl., (Seattle, WA), ¶6 (same); Little Decl., (Loma Linda, CA), ¶5 (no overtime); Do Decl., (Loma Linda, CA), ¶5; Cacciagrani Decl., (multiple locations in Massachusetts), ¶5; McCague Decl., (Pittsburgh, PA), ¶6; Bartoni Decl., (Palo Alto/Menlo Park, CA), ¶6.

Per the 30(b)(6) testimony, VCS takes the position that ACCs who "didn't manage their time right" should not be "rewarded" with overtime pay. *See* Ex. 3, Tr. at 99:19-101:11. As the accompanying affidavits show, ACCs had to work numerous overtime hours to complete their required tasks, which were unpaid hours. *See* section (ii), above.

v.       Canteen Chief Oversees the Canteen and Assigns Tasks to ACCs

Every Canteen has a Canteen Chief ("CC") who runs the canteen, assigns ACCs to various areas of the Canteen, and manages operations and personnel. CCs, not ACCs, are responsible for hiring and firing decisions. *See, e.g.*, Carter Decl., (multiple locations), ¶9 ("Throughout my entire employment with Defendant, I was not responsible for hiring and  firing decisions."); Cooper Decl., (New Orleans, LA), ¶6 ("The Chief [and not ACC] was responsible for hiring, firing, discipline, and performance reviews…"); Quintero Decl., (Seattle, WA), ¶7; Conn Decl., (West Haven, CT), ¶6; Webb Jr. Decl., (Los Angeles, CA), ¶7; Do Decl., (Loma Linda, CA), ¶6; Cacciagrani Decl., (multiple locations in Massachusetts), ¶6; McCague Decl., (Pittsburgh, PA), ¶7; Bartoni Decl., (Palo Alto/Menlo Park, CA), ¶4; s*ee also* Ex. 3, Tr. at 64:17-25, 65:6-14; Ex. 5 at 4678, 4680 (CCs  - and not ACCs - assigned "the full range of personnel management responsibilities.")

vi.      Canteen Chiefs and Regional Managers Assign Tasks and are Aware of Hours ACCs
         Work

CCs communicated with ACCs throughout the day, before and after their scheduled shifts. They would exchange communications and emails at all hours, assign the ACCs to various departments to conduct manual job tasks assisting the Canteen's customers, observe the hours ACCs were working, and the tasks they were performing. This is confirmed by the statement of a CC who provided a declaration to Plaintiff. Flagman Decl., (Seattle, WA), ¶5; *see, also,* Cannary Decl., (Waco, TX), ¶5 ("The Canteen Chief was aware of the hours I was working and would often see when I was arriving and leaving the canteen, would communicate with me regularly about my hours and assignments, and would task me with assignments before and after the scheduled work hours."); Little Decl., (Loma Linda, CA), ¶5; Quintero Decl., (Seattle, WA), ¶6; Carter Decl., (multiple locations in California and other states), ¶8; Conn Decl., (West Haven, CT),

¶5; Do Decl., (Loma Linda, CA), ¶5; Cacciagrani Decl., (multiple locations in Massachusetts), ¶5; McCague Decl., (Pittsburgh, PA), ¶6; Bartoni Decl., (Palo Alto/Menlo Park, CA), ¶6.

ACCs complained to CCs and Regional Managers (who oversaw multiple canteens), about the excessive hours they were working, but the general response from management was that ACCs are salaried employees and not eligible for overtime pay. Canteen Chief declarant confirms he would explain to his ACCs that "as salaried employees they were not entitled to overtime pay…" Flagman Decl., (Seattle, WA), ¶5; *see also* White Decl., (Tacoma and Seattle, WA), ¶6 ("I complained about my hours to the Regional Manager, Dwayne Finkley, who simply informed me that 50 hours were required, and more was often needed on top of that minimum."); Webb Decl., (Los Angeles, CA), ¶9 ("We were told to do what the chief said and to shut up and color."); Cooper Decl., (New Orleans, LA), ¶8 ("I complained about not being paid for all my hours to my chief, but was informed that as a salaried employee, I wasn't entitled to receive additional pay."); Quintero Decl., (Seattle, WA), ¶8 ("During one or more of the[] national phone conferences, I was informed that Assistant Chiefs needed to work at least 50 hours per week."); Do Decl., (Loma Linda, CA), ¶8 (was informed that management does not get overtime pay); Cacciagrani Decl., (multiple locations in Massachusetts), ¶8 (same); McCague Decl., (Pittsburgh, PA), ¶8 (same); Bartoni Decl., (Palo Alto/Menlo Park, CA), ¶8 (was told that he "had to do what needed to be done.")

## B.  VCS Exercises Centralized Control and Issues Common Policies for all ACCs in its Canteens Nationwide

The VCS issues detailed operating procedures and guidelines that apply to the operation of every canteen in the United States, through its nationalized policies ("COPPs") established by the VCS Central Office in Saint Louis, Missouri. Ex. 3, Tr. at 32:2-15; 64:5-9, 72:2-11. Defendant's

30(b)(6) witness confirmed that the same COPPs, job description and FLSA-exempt classification status apply to all ACCs, regardless of geographical location, experience level and pay grade, and that this is the only job description in effect during the relevant time period. *Id.*, at 34:24-35:10; Ex. 8. All ACCs report to a CC who manages the canteen location where they work. Ex. 3, Tr. at 32:21-34:18.

## IV.   LEGAL ARGUMENT

### A.  The Standard for Conditional Certification is Lenient, and Favors Certification

Employees alleging violations of their rights under the FLSA may bring a claim seeking relief on their own behalf and on behalf of all "other employees similarly situated." 29 U.S.C. § 216(b). In the Federal Circuit, courts determine whether the plaintiffs are similarly situated to each other by using a two-step process. *Barry v. United States*, 117 Fed. Cl. 518, 520-51 (2014).

At the initial stage, "Plaintiffs' burden . . . is low." *Id.* at 521. Plaintiff needs only make a "modest factual showing" that plaintiff and other putative collective action members are "similarly situated," i.e., that they share "common issues of law and fact arising from the same alleged prohibited activity." *Id.* (internal quotations omitted). This analysis is "usually made under a fairly lenient standard and typically results in conditional class certification." *Mitchell v. Acosta Sales, LLC*, 841 F.Supp.2d 1105, 1115 (C.D. Cal. 2011). The first step results in notice issued to potential plaintiffs so that have had an opportunity to opt in and toll their statute of limitations. Then, in the second step, the defendant may move to decertify a conditionally certified class, and the Court must determine if there is sufficient similarity to allow the matter to proceed to trial on a collective basis. *Gayle v. United States*, 85 Fed. Cl. 72, 77-78 (2008); *Heckler v. DK Funding*, 502 F.Supp.2d 777, 779 (N.D. Ill.2007).

Plaintiff can satisfy the evidentiary burden imposed by the first step by showing that

14

affidavits and other available evidence support the conclusion that potential class members are similarly situated. *Cuzco v. Orion Builders*, 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007). The Court does not resolve factual disputes, evaluate Plaintiff's claims on the merits, nor make credibility determinations at this stage. *Plaintiff No. 1 v. United States*, 2021 WL 1328609 *1 (Apr. 9, 2021); *Centurioni v. City and County of San Francisco*, No. C 07-01016, 2008 WL 295096, at *2 (N.D. Cal. Feb. 1, 2008). The question at conditional certification "is <u>not</u> whether plaintiffs have proven their case that there is a widespread [unlawful policy], but whether there is a reasonable basis to conclude that there are 'potentially' similarly-situated class members who would 'benefit' from notice." *Wellens v. Daiichi Sankyo, Inc.*, 2014 WL 2126877, at *4 (N.D. Cal. May 22, 2014) (emphasis added). In this renewed motion, Plaintiff has met this lenient standard to warrant notice be issued to ACCs nationwide.

**B. Plaintiff Has Met – and Exceeded – the Standard to Grant Conditional Certification**

i.  <u>Defendant Conceded as Few as Nine Declarants is Sufficient for Nationwide Certification</u>

Defendant admitted that declarations from nine nationwide collective action members would be sufficient for the Court to grant Plaintiff's motion for conditional certification of a nationwide class, so that notice may be issued to class.

THE COURT: Let me ask you, what would be enough here, a hypothetical?

MR. ANDERSON: Hypothetical, if you had a larger swath -- so say you had nine people, one from St. Louis, one from New York, one from Puerto Rico or one from Portland, Oregon, you could say, you know what, there's 50 states, there's VCS in all 50 states and including Puerto Rico. I don't need all 50 as a judge, but, you know what, 9, I can sort of see that, I can sort of see that, you know, geographically, the way it's spread, the way that they're kind of disconnected from each other, I can sort of see where there may be at least enough for me to issue notice that you may be part of the lawsuit.

Ex. 1, Tr. at 20:15-21:12.

Here, Plaintiff has submitted 13 declarations of ACCs throughout the country who attest to their similar experiences, warranting notice under Defendant's own standard. In addition, Plaintiff submitted a declaration of a Canteen Chief, who confirms ACCs worked long hours performing non-exempt work, and were not entitled to overtime. Flagman Decl., (Seattle, WA), ¶¶3-5.

ii.   Plaintiff has Provided the Additional Information for Conditional Certification per the Court's Conditional Certification Order

The Court's Order states that, "[b]ecause Plaintiff failed to provide evidence from canteens and regions other than those in which Plaintiff works, Plaintiff's motion for nationwide conditional certification must be denied without prejudice." Dkt. 33 at p. 18. In its Order, the Court stated that: "[n]o evidence currently exists in the record suggesting that ACCs in other regions were required to perform non-exempt tasks similar to those Plaintiff alleges." *Id*. at p. 11. The Court had noted that Plaintiff's motion did not show sufficient evidence that ACCs at other canteens throughout the country also performed non-exempt duties. *Id.* at pp. 13-15.

In this renewed motion, Plaintiff now submits this evidence to the Court. This additional evidence closely parallels the case law the Court previously cited where other courts granted nationwide conditional certification. *See* Order at p. 17 (*See, e.g.*, *Amador v. Morgan Stanley & Co.*, No. 11-cv-4326, 2013 WL 494020, at *5 (S.D.N.Y. Feb. 7, 2013) (relying on evidence from 11 individuals spread over 13 locations in 9 states); *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 746 (M.D. Tenn. 2018) (relying on evidence from 12 individuals who worked at 8 locations in 5 states); *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 201 (D.D.C. 2018) (relying on evidence from 7 individuals from 6 states); *Stevens v. HMSHost Corp.*, *No. 10-cv-3571*, 2012 WL 13098466, at *3 (E.D.N.Y. 2012) (relying on evidence from 4 individuals from locations in

3 states)). Where the evidence in this case is very similar, conditional certification is now warranted.

   iii.   <u>Courts Routinely Conditionally Certify Collectives in Similar Circumstances</u>

Plaintiff(s) "need not submit a large number of declarations or affidavits to make the requisite factual showing," as the plaintiff(s)' declaration, or a handful of declarations, typically suffices. *Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 838 (N.D. Cal. 2010). This Court and others have recognized that individuals deprived of overtime pay due to an alleged misclassification have been subject to a common policy for purposes of conditional certification. *Barry*, 117 Fed. Cl. at 522; *see also Doe No. 1 v. United States*, 143 Fed. Cl. 113, 116 (2019) (granting nationwide certification to a group of FBI employees who occupied the same positions and job series and who alleged that they were misclassified as FLSA-exempt).

Here, 13 declarants from 22 canteens in 12 states is sufficient evidence of a *de facto* nationwide practice, warranting issuing notice to ACCs nationwide. Courts have granted conditional certification under similar circumstances and on similar evidence. *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at **6, 9 (S.D. Ohio Sept. 25, 2019) (approving nationwide conditional class of call center employees based on plaintiff's submission of declarations from nine current and former employees from four different locations in four different states). In *Cowan*, the Court determined the declarant evidence was sufficient to grant nationwide certification, and over defendant's objection, the court did <u>not</u> limit certification to any specific location. *Id.* ("the Court also declines to limit the class to any specific locations at this stage. Plaintiff's submission of Declarations from **nine** current and former employees from four different locations in four different states and work-at-home, is sufficient to show that all putative class members were subject to the same company-wide policy and practice

as Plaintiff regardless of their location." (emphasis added)); *see also Vasto v. Credico (USA) LLC*, No. 15 CIV. 9298 (PAE), 2016 WL 2658172, at **10, 15 (S.D.N.Y. May 5, 2016) (granting conditional certification of a nationwide class where the four named and five opt-in plaintiffs collectively worked at defendant's 10 locations in four states, and confirming that "courts in this District have held that "[w]here plaintiffs allege such idiosyncratic conduct across multiple [locations/subcontractors], it is reasonable to infer that the same pattern of behavior occurred at defendants' other [locations/subcontractors]") (internal quotations omitted); *Higgins v. Bayada Home Health Care, Inc.*, 2018 WL 8368874, at *1 (M.D. Pa. May 11, 2018) ("The court concludes that the evidence produced by the plaintiffs, including the declarations of… ten opt-in plaintiffs from four states who worked as Clinicians in the job titles at issue, is sufficient to warrant conditional certification of a nationwide collective action."); *Guttentag v. Ruby Tuesday, Inc.*, No. 12 CV 3041 HB, 2013 WL 2602521, at **2, 3 (S.D.N.Y. June 11, 2013) (granting conditional certification of a national class of restaurant workers where plaintiff submitted, among other evidence, declarations of employees from eight different restaurants located in four different states, where at issue in the lawsuit were 710 restaurants in 39 states).

Here, Plaintiff's evidence of declarants' experiences in 22 canteens in 12 states – in addition to the evidence Plaintiff submitted in her original motion, including the same nationwide policies, job description, job postings and FLSA-exempt classification – meets the standard for conditional certification based on the sufficient similarities between the experiences of ACCs at canteens nationwide. Courts recognize such evidence is sufficient to grant conditional certification:

> Here, Plaintiffs' declarations and depositions-which cover eight T.G.I. Friday's locations in four states-contain common allegations of FLSA violations, including Defendants' denial of full minimum wage and overtime compensation for tipped workers. This evidence, coupled with the evidence of Defendants' centralized

> control over T.G.I. Friday's restaurants nationwide, suffices to meet the minimal
> burden for conditional certification.

*Flood v. Carlson Restaurants Inc.*, No. 14 CIV. 2740 AT, 2015 WL 260436, at *4 (S.D.N.Y. Jan.
20, 2015); *see also Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 771 (N.D. Ohio 2015)
(approving nationwide class based on declarations from **five plaintiffs who worked in three**
**different states**, as well as job postings to demonstrate that plaintiffs and potential opt-in plaintiffs
were similarly situated); *Pendlebury v. Starbucks Coffee Co*., 2005 WL 84500, *3 (S.D. Fla. Jan.
3, 2005) (evidence that alleged improper classification spanned seven different locations **in four**
**states** sufficient for nationwide certification).

     In *Heibel v. U.S. Bank Nat. Ass'n,* No. 2:11-CV-00593, 2012 WL 4463771 (S.D. Ohio Sept.
27, 2012, the Court stated that: "MLOs within Columbus area branches as well as various other
branches across **four other states performed the same basic job duties, frequently worked**
**over forty hours per week, and were not paid overtime.**" *Id.* at *5 (emphasis added). Plaintiff
provides the same evidence here – from 12 states – indicating that ACCs perform the same non-
exempt, manual job duties, work over 40 hours per week, and do not receive overtime pay.

**C.**  **Nationwide Opt-In Consents Should be Permitted to be Filed and Tolling of Statute**
     **of Limitations from the Date the Court Issued Order Striking Opt-In Consent**
     **Forms is Proper**

     The statute of limitations for FLSA claims is tolled for a collective action member once he
or she files a consent-to-sue form with the court. *See* 29 U.S.C. § 256. Here, once Plaintiff obtained
the Court's permission to conduct her own investigation, Plaintiff, through her counsel, contacted
ACCs who worked at VCSs in other states. Consequently, several ACCs provided Plaintiff with
their declarations, and signed consent-to-sue forms, which Plaintiff promptly filed with the Court.
Between December 22, 2021 and April 4, 2022, Plaintiff filed consent-to-sue forms on behalf of

eight individuals. Dkt. Nos. 39, 44-50. One individual, Richard Bartoni, worked at the Palo Alto or Menlo Park location, and the remaining seven individuals worked at five other locations in California (Los Angeles, Fresno, Martinez, San Francisco, and Loma Linda), two locations in Washington state (Seattle and Tacoma), as well as in Waco, Texas, and in Washington D.C. *See* attached declarations.

On April 5, 2022, the Court issued a sua-sponte order striking all consent-to-sue-forms on procedural grounds (for failure to comply with the signature requirements for electronic filings), and all but Bartoni's consents were additionally stricken for not being filed in response to Court's approved Notice conditionally certifying claims of ACCs at Menlo Park and Palo Alto locations. *See* Dkt. No. 51. Plaintiff promptly re-filed Mr. Bartoni's consent-to-sue form on April 5, 2022. Dkt. No. 52.

Since the Court's April 5, 2022 Order, five additional individuals who worked in Pittsburgh, Pennsylvania; West Haven, Connecticut; Loma Linda, California; New Orleans, Louisiana, and four locations in Massachusetts, including Boston, signed their consent-to-sue forms. *See* Exhibit 12.[3] Thus, at this point, in total, 12 individuals have agreed to join this action as opt-in plaintiffs, however, due to the Court's order, their consent-to-sue forms are not currently filed with the Court. *Id*.

Plaintiff respectfully requests that the statute of limitations be tolled for all individuals who have signed the consent to sue forms, but whose forms were either stricken by the Court, or not yet filed as a result of the Court's April 5, 2022 Order. For the stricken consent-to-sue forms, the

---

[3] All consents to sue signed by proposed plaintiffs, who worked at locations other than Palo Alto or Menlo Park, California, are attached to Plaintiff's Appendix as Exhibit 12, in alphabetical order.

tolling should commence on the date of the Court's order (April 5, 2022), and for the forms signed

after the Court issued its April 5, 2022 order, the tolling should begin on the date the forms were

signed. Plaintiff believes the tolling here is warranted, because the consent-to-sue forms may be

filed outside of the conditional certification notice, and consequently, should not have been

stricken:

> Since the sole consequence of conditional certification is the sending of
> court-approved written notice to employees…it follows that the sole
> consequence of *denying* conditional certification is that the notice is *not
> sent*, and nothing in the text of the statute prevents plaintiffs from opting
> into the action by filing consents with the district court, even when
> notice…has not been sent.

*Augustyniak v. Lowe's Home Ctr., LLC*, 2016 WL 462346, at *1–2 (W.D.N.Y. Feb. 8, 2016)

(internal quotation marks omitted, emphasis in original), citing to *Myers v. Hertz Corp.*, 624 F.3d

537, 555 n. 10 (2nd Cir. 2010) where the court confirmed that the only requirement for an opt-in

plaintiff is to be "similarly situated" to the named plaintiff who brought the action. Further, "a

motion for conditional certification need not be pending for a plaintiff to opt in." *Gonyer v. Vane

Line Bunkering, Inc.*, 32 F. Supp.3d 514, 516, 517 (S.D.N.Y. 2014) (emphasis added); *see also

Myers, supra*, 624 F.3d at 555 n.10 (agreeing with cases that hold that certification of a collective

action and issuance of the notice does not actually "create a class of plaintiffs for a FLSA collective

action.").

Applying the rationale of these authorities, here, after the Court denied nationwide

conditional certification, a notice to a nationwide class was *not* sent, but this should not prevent

ACCs from locations other than Palo Alto and Menlo Park from opting into this action, even before

Plaintiff's renewed motion was filed and decided. As evidenced by their declarations, the opt-in

plaintiffs are similarly situated to Ms. Smith, which is the only condition they needed to meet

under the FLSA statute in order to join this action. *See also Brown v. Barnes and Noble, Inc.*, 2018

WL 3105068, at *2 (S.D.N.Y. June 25, 2018) (recognizing 21 opt in plaintiffs who consented to become a party in the action before the court decided plaintiffs' renewed motion for conditional certification).

Lastly, the forms Plaintiff attempted to file in this action put Defendant on notice that these opt-in plaintiffs would be joining this action. Defendant has not suffered any prejudice, because they have been aware of ACC's nationwide claims against them from the inception of this action. This argument further supports Plaintiff's tolling request. *See Arciello v. Cty. of Nassau*, 2019 WL 4575145, at *11 (E.D.N.Y. Sept. 20, 2019).

### D.  Notice Should be Issued to ACCs Who Worked in the Past Three Years Nationwide

The proposed Notice of Pendency of Action and accompanying Consent to Join as an Opt-In Plaintiff, attached as Exhibits 9 and 10, should be adopted as the Court-authorized notice and consent form.

Defendant conceded that notice for three years was appropriate in its opposition to Plaintiff's original conditional certification motion, and notice was issued to ACCs who worked at the Palo Alto and Menlo Park Canteens in the past three years. Where plaintiffs have made allegations of willfulness, courts generally will not limit the potential class at the conditional certification stage. Dkt. 1, Compl., ¶¶33, 56; *see, e.g., Centurioni*, 2008 WL 295096, at *3; *Gayle v. U.S.*, 85 Fed.Cl. at 80.

### E.  The Court Should Order Defendant Produce Contact Information Necessary to Carry Out Nationwide Notice

Courts routinely order defendants to produce contact information for all potential plaintiffs in conjunction with conditional certification; indeed, Plaintiff would have no way to facilitate distribution of the Court-ordered notice without that contact information. *See, e.g., Mitchell v.*

*Acosta Sales, LLC,* 841 F. Supp.2d 1105, 1120 (C.D. Cal. 2011) (directing the defendant to produce names, last known addresses, telephone numbers, job titles, and last known email addresses for all persons within the proposed class for the previous three years). Further, the Parties already have an agreed upon Court protective order on file in this action, establishing guidelines for release of information to Plaintiff's counsel covered by the Privacy Act. *See* ECF No. 15 p.1.

In the previous conditional certification Order, the Court held that providing collective action members' last known addresses and job titles would be sufficient, as including telephone numbers and last known email addresses could raise privacy concerns. Order at 19.

Accordingly, to facilitate the sending of the notice and consent forms, Plaintiff moves the Court to direct Defendant to provide, in electronic format, the names, last known addresses, and job titles of all potential opt-in plaintiffs employed at VCSs anywhere in the United States at any time within the applicable statutory time period.

## V.   CONCLUSION

Plaintiff has now supplied additional evidence of the experiences of ACCs employed at various VCS locations throughout the United States, supplying the missing link as identified in the Court's prior order denying Plaintiff's nationwide conditional certification without prejudice.

Plaintiff respectfully requests that the Court now grant nationwide conditional certification so that notice may be issued to ACCs who worked at VCSs located anywhere in the United States in the last three years, so that they may be permitted an opportunity to opt-in to this action. The Court should also order that Plaintiff's declarants be permitted to file their opt-in consent forms on the docket, and that their statute of limitations be tolled from the date of the Court's April 5, 2022 Order, or, for those who signed consent to sue forms after April 5, 2022, from the date the opt-in consent to sue was signed.

Respectfully submitted,

s/ David R. Markham
David R. Markham
*dmarkham@markham-law.com*
Maggie Realin
*mrealin@markham-law.com*
Lisa Brevard
*lbrevard@markham-law.com*
**THE MARKHAM LAW FIRM**
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (619) 399-3995
Facsimile: (619) 615-2067

s/Walt Pennington
Walt Pennington
*wpennington@pennfirm.com*
Pennington Law Firm
3302 30th Street
San Diego, CA  92104
Telephone: (619) 940-6157

Dated: April 21, 2022

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of April 2022, the foregoing ***MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE*** was electronically filed with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record who have enrolled and registered for receipt of filings via the Court's ECF system.

 /s/ Leeanna Carcione   
